THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
GEORGE W. TAYLOR, PLAINTIFF IN ERROR.

·Argued July 1, 1902—Decided November 17, 1902.

1.  At the time of the adoption of our present constitution the several
    Courts of Oyer and Terminer were composed of a justice of the
    Supreme Court and the judges of the Court of Common Pleas of
    the county in which the court sat.  In 1898, by statutory enact-
    ment, the judge of the Court of Common Pleas, in counties having
    a population of three hundred thousand, was authorized, in the
    absence of the Supreme Court justice, to hold the Court of Oyer
    and Terminer, sitting alone.  *Held*, that this legislation was valid.
2.  The constitution does not preserve from legislative encroachment
    those functions and powers which, at the time of its adoption,
    were lodged in the several justices of the Supreme Court, as dis-
    tinguished from the court itself.  Such functions and powers still
    remain subject to legislative control, and no prerogative of the
    Supreme Court is invaded by their abolition.
3.  Legislation regulating the administration of the criminal law in
    certain counties of the state does not regulate the internal affairs
    of those counties.
4.  This court will not revise, much less overturn, a decision made by
    it, upon a matter which was directly presented for its determina-
    tion, except upon the fullest conviction that it is erroneous.  And
    it will not do so, even then, when the decision has been so long
    acquiesced in, and acted upon, that a return to the proper prin-
    ciple would disastrously affect existing interests.

On error to the Hudson Oyer and Terminer.

For the plaintiff in error, *Joseph M. Noonan.*

For the state, *James S. Erwin,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.  The plaintiff in error was con-
victed in the Hudson County Court of Oyer and Terminer
of the crime of murder in the first degree, and sentenced to
be executed for that crime.  The court before which the trial
was had was, in the absence of a Supreme Court justice, held
by the judge of the Court of Common Pleas of the county

of Hudson, sitting alone, in pursuance of section 3 of the Criminal Procedure act. *Pamph. L.* 1898, *p.* 867. That section, after providing that any justice for the time being of the Supreme Court and the judge for the time being of the respective inferior Courts of Common Pleas in and for the several counties of this state shall constitute the Court of Oyer and Terminer in and for the said counties, respectively, then proceeds as follows: "But, in the absence of the judge of the inferior Court of Common Pleas, such justice of the Supreme Court, sitting alone, shall constitute and may hold said Court of Oyer and Terminer; and, in any county having three hundred thousand inhabitants, as shown by any state or federal census, in the absence of such justice of the Supreme Court, the judge of the inferior Court of Common Pleas, sitting alone, shall constitute and may hold said Court of Oyer and Terminer." The jury by whom the prisoner was tried was a struck jury, drawn in accordance with the provisions of sections 75 and 76 of the Criminal Procedure act. *Pamph. L.* 1898, *pp.* 894, 895.

The first assignment of error is directed to the manner in which the trial court was constituted; the contention being that section 3 of the act of 1898, so far as it authorizes the judge of the Court of Common Pleas to hold the Oyer and Terminer, in the absence of a Supreme Court justice, is unconstitutional—*first,* because it impairs the jurisdiction of the Supreme Court, and *second,* because it is special legislation regulating the internal affairs of counties.

The Court of Oyer and Terminer is now, and always has been, a statutory, not a constitutional, tribunal; notwithstanding that, until the enactment of the act of 1898, one of its members was always required to be a justice of the Supreme Court. At the time when New Jersey became an independent sovereignty the court was constituted and appointed by a commission issued by the governor, only the several justices of the Supreme Court and judges and justices of the peace of the county in which the court was to sit being eligible for appointment. *Wils. L., pp.* 22, 23. This method of constituting the court was done away with by the act of

November 27th, 1794, which provided that the justices of the Supreme Court and the judges of the Court of Common Pleas in the several counties should, without any other commission, constitute the Courts of Oyer and Terminer in those counties. *Pat. L., p.* 137. It will be observed that the commissions by which these courts were constituted, prior to 1794, did not issue to the Supreme Court, but to the individual members of that tribunal; and that no change in that regard was made by the statute passed in that year, the only alteration being the substitution of what has been sometimes called a statutory commission in the place of the commission of oyer theretofore issued by the governor. The act of 1794, substantially as it was originally enacted, remained upon the statute-book up to the time of the adoption of our present constitution. During that period the Supreme Court, as a judicial body, never was a component part of the Court of Oyer and Terminer, the right to sit in that court, as has already been stated, being vested in the several Supreme Court justices individually. The constitution preserves to the Supreme Court its jurisdiction, functions and powers as they existed at the time of the adoption of that instrument. It does not, however, protect from legislative encroachment those functions and powers which are lodged in the several members of the court, as distinguished from the court itself. Such functions and powers still remain subject to legislative control, and no prerogative of the Supreme Court is invaded by their abolition. The contention of the plaintiff in error, that section 3 of the Criminal Procedure act of 1898 impairs the jurisdiction of the Supreme Court, is without legal support.

Nor is there more merit in the claim that this statutory provision is special legislation regulating the internal affairs of counties, and, for this reason, unconstitutional. While it applies only to those counties which have a population of three hundred thousand or more, it in no sense regulates the internal affairs of those counties. The administration of the criminal law in any locality is not merely a matter of local concern, but one in which the state at large is interested equally with the locality. The fact that the law deals with

a matter affecting the interests of the state at large, makes it a general law, notwithstanding that it is operative only in certain counties. *Doughty* v. *Conover,* 13 *Vroom* 193.

The second assignment of error is directed at the action of the trial court in ordering a jury to be struck, on motion of the state, to try the indictment against the defendant; the allegation being that no reason existed for granting the application. Such an application is to be determined by the court in the exercise of a sound discretion (*Brown* v. *New Jersey,* 175 *U. S.* 177); and there is nothing in the case before us to justify the conclusion that this discretion was improperly exercised.

The third and last assignment is based upon the refusal of the trial judge to permit the plaintiff in error to peremptorily challenge more than five of the panel of jurors. The judicial action complained of was in conformity with the requirement of the seventy-sixth section of the Criminal Procedure act, and plaintiff in error contends that this statutory provision is in violation of the alleged constitutional right, of a prisoner on trial for murder, to challenge peremptorily twenty of the panel of jurors.

In disposing of the question presented by this assignment of error, it is sufficient to say that it is no longer an open one in this state. In the case of *Brown* v. *State,* 33 *Vroom* 666, 720, one of the questions specifically submitted to this court for its decision was the following: "Is a provision in such a statute [*i. e.,* a statute which provides for the trial of a criminal offence by a struck, instead of a common, jury] ordering peremptory challenges below the number allowed prior to the adoption of the constitution, in violation of the right of a person, indicted for a criminal offence, guaranteed by the constitution?" and the conclusion reached was that it was not. Such a declaration must be accepted as final. This court will not revise, much less overturn, a decision made by it, upon a matter which was directly presented for its determination, except upon the fullest conviction that it is erroneous. And it will not do so, even then, when the decision has been so long acquiesced in, and acted upon, that

a return to the proper principle would disastrously affect existing interests.

The judgment of the Hudson Oyer and Terminer must be affirmed.

MAGIE, CHANCELLOR (dissenting). I agree with the conclusions of the court in respect to all the questions presented in this cause, except that which challenges the constitutionality of the act permitting an Oyer and Terminer to be held to try an indictment for murder without the presence of a justice of the Supreme Court. That act, I am compelled to think, was beyond the power of the legislature to enact.

It is not open to doubt that all the judicial functions and powers existing in the Supreme Court at the time of the adoption of the constitution of 1844 were, by the provisions of that act of the will of the people, placed beyond the power of interference or diminution by legislative enactment.

At that time there had been, in my judgment, conferred upon the Supreme Court the judicial function of constituting by one of its members the Courts of Oyer and Terminer, which were incapable of doing any judicial act without the presence of a justice of that court. This authority was conferred by the provisions of the act of 1794, not upon a particular justice, nor upon any one of such justices to whom a judicial district was assigned, but upon the court itself, to be exercised by any one of its members. So it was properly held in that court that a record of the Oyer and Terminer could be authenticated by the signature of any one of its members, although he had not been present at or taken part in the trial which was the subject of the record.

As the act in question here permits an Oyer and Terminer to be held without the presence of any justice of the Supreme Court, I think that it has interfered with and diminished a judicial function and power of that court, and so is obnoxious to the constitutional restriction on legislative action in that respect.

*For affirmance*—THE CHIEF JUSTICE, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, ADAMS, VREDENBURGH, VOORHEES. 10.

*For reversal*—THE CHANCELLOR, VROOM. 2.