IN THE MATTER OF THE APPLICATION OF THE PROSECUTOR OF THE PLEAS FOR HUDSON COUNTY FOR AN ORDER TO COMPEL CORPORATION BOOKS TO BE BROUGHT WITHIN THE STATE.

Argued November Term, 1909—Decided March 14, 1910.

1.  It is not essential that a subpœna to testify before a grand jury should set forth a specific pending case; it may properly be to testify generally.
2.  The pendency of a case before a grand jury, in which the books of a New Jersey corporation may furnish evidence, presents a proper cause for an order to bring books within the state under section 44 of the Corporation act.

For the motion, *Pierre P. Garven*, prosecutor of the pleas, and *Joseph M. Noonan*.

Opposed, *Richard V. Lindabury*, *Wm. D. Edwards* and *Samuel Untermeyer* (of the New York bar).

SWAYZE, J. The prosecutor of the pleas for the county of Hudson applies for orders compelling certain New Jersey corporations to bring within the state the books of minutes of stockholders and directors. The only objections made on behalf of the corporations are two—*first,* that the prosecutor fails to show what cause is pending in which the books may be required as evidence; *second,* that I have no power to compel the books to be brought within the state except where they may be needed in a cause in the Supreme Court so that they may be subject to the control of that court or of myself as a justice of the court.

*First.* The petition shows only that the grand jury is investigating charges of conspiracy and other criminal offences against divers individuals, for the proper investigation of which it is necessary to examine the books in question. A subpœna *duces tecum* has been served, which has been unavailing because the books have been kept out of the state. In some jurisdictions it is required that a subpœna to testify before the grand jury should state a definite pending case. Such seems to be the rule in Pennsylvania. *Appeal of Hartranft,* 85 *Pa. St.* 433. For reasons presently to be stated, I think this case is not applicable in New Jersey. It was urged at the argument that the rule in New York was the same. I am not referred to the authorities, but can readily believe that such rule may arise out of the provisions of the New York code. If so, these authorities would be quite inapplicable in this state. My inquiries of my brethren who have had experience in criminal practice show that in this state the practice varies in different counties, and that in the more populous counties it has been usual to issue subpœnas to testify generally before the grand jury without specifying a particular case. The correctness of this practice must depend upon the power of the grand jury. If that power is limited to an investigation of cases in which defendants have been arrested, and are held either on recognizance or in jail, and of cases specially given them in charge by the court, it may well be that the subpœna should specify the case in which attendance is desired. Such is the rule in Pennsylvania, and this would account for the decision in Hartranft's appeal. If the grand jury has the right to do what its oath indicates is its duty—diligently inquire into all such matters as shall in any way come to their knowledge—a different rule ought to be applied. Often a crime may have been committed and may be notorious, although the perpetrator may be unknown; in other cases there may be grave suspicion that a crime has been committed, although such suspicion may be far from certainty. It would thwart the administration of justice to hold that in every instance the case to be investigated must be definitely specified in the subpœna, for

not only may the grand jury be ignorant of the necessary facts but to give the name of the suspected individual, or even to describe the supposed offence, may warn the offender and give him an opportunity to escape. To specify in such a case would deprive the investigation of the grand jury of the advantage of secrecy which is characteristic of their proceedings. The question has been recently considered by the Supreme Court of the United States, and that court has reached the conclusion that the grand jury has general power to investigate. *Hale* v. *Henkel,* 201 *U. S.* 43. This decision states what has generally been supposed to be the rule in New Jersey. If the grand jury has this power, it follows that it may subpœna witnesses generally, even when it is unknown whether or not a crime has been committed, or if one has been, by whom. If it be said that this general power makes it possible for a grand jury to harass and vex citizens by subpœnaing them in cases in which they have no knowledge, the answer is that attendance upon court is one of the burdens imposed upon members of a civilized society, and it must be left to the good sense and fairness of grand jurors who may be trusted not to vex or harass their fellow-citizens out of mere wantonness. As Lord Bacon said: "For that which you are properly charged with, you must know that all subjects, without distinction of degrees, owe to the king tribute and service not only of their deed and hand but of their knowledge and discovery." *Countess of Shrewsbury's Case,* 2 *St. Tr.* 769, 778. The case of *In re Haines,* 38 *Vroom* 442, to which I am referred, is not to the contrary. That was the case of a subpœna to testify on the trial of an indictment, where the reasons which I have above set forth were not applicable, and the Supreme Court very properly held that the subpœna should recite in what case it was issued. The note by Judge Hughes to his opinion in *United States* v. *Ralston,* 17 *Fed. Rep.* 895 (at *p.* 901), supports the issue of a general subpœna. The learned judge by his very criticisms of the practice recognizes its existence, and not by embodying the criticisms in his opinion indicates that it was meant rather by way of warning than as a declaration of the

law. Section 877 of the United States statutes authorizes the practice expressly.

*Second.* This application is made under section 44 of the Corporation act. This section has been construed by the Court of Errors and Appeals in *Fuller* v. *Hollander & Co.,* 16 *Dick. Ch. Rep.* 648 (at *p.* 653). Mr. Justice Collins, speaking for the court, said: "The true construction of the section quoted, so far as it confers power upon a justice of the Supreme Court or upon the Court of Chancery, is that whenever proper cause is shown to the judicial authority whose action is invoked, the books of a corporation that are by law permitted to be kept outside the state may be summarily ordered brought within the territorial control of such judicial authority. Proper cause would be shown by presenting a situation within the range of such authority, in which the production of the books would subserve some lawful or useful end within the judicial control. No other jurisdiction is conferred." In the succeeding paragraph the court recognized that cases frequently arise where the corporation itself is not a party to litigation in which nevertheless its books may be legal evidence.

The present case is an investigation pending before a grand jury in which these books may furnish evidence. That presents a proper cause, and the only question is whether it is within the range of my authority and whether the end to be subserved by the production of the books is within the judicial control. It is argued that the expression "within the judicial control" means within the control of the judge who makes the order. This is not the necessary meaning of the opinion. "The judicial control" may mean not the control of the particular judge, but the control of the judiciary—the judicial department of the government. If so, this case clearly comes within the language, since the case in which the books are wanted is within the control of the Hudson Oyer and Terminer, a judicial tribunal of this state. If the narrower construction is adopted, the case is perhaps more difficult. Under *State* v. *Taylor,* 39 *Vroom* 276 (at *p.* 278), my function and power as a judge of the

Hudson Oyer are lodged in me as an individual and are not, as was formerly held in *Stone* v. *State, Spenc.* 404, a part of the functions and powers of the court itself. Under the Criminal Procedure act of 1898, I hold the Oyer alone only in the absence of the judge of the Common Pleas. In its practical aspect I could control the use of the books in the Hudson Oyer, since their production could only be enforced by attachment for contempt, and no such attachment could be effective without my assent; but it would seem to me to savor of practical expediency rather than of legal right to decide so important a matter on that ground. An examination of the statute shows, however, that proceedings in contempt are subject to the control of the Supreme Court. By the act of 1884 (*Gen. Stat., p.* 2600, *pl.* 381), it is enacted that every summary conviction and judgment by any court inferior in its jurisdiction to the Supreme Court, except an orphans court, for a contempt against its own dignity, peace or good order, shall be reviewable both upon the law and the facts by the Supreme Court. This statute has been applied in a review of the action of the Oyer and Terminer. *In re Cheeseman,* 20 *Vroom* 115. The actual production and use of the books before the grand jury, if the corporations refuse to produce them, when they are brought within the state, can be enforced only by attachment, and whatever the action of the Hudson Oyer and Terminer might be upon proceedings to attach for contempt, they would be subject under this statute to review by the Supreme Court. Section 44 of the Corporation act indicates that proceedings to enforce the order of the justice are to be had in the court itself, and I have no doubt that the matter is subject to the judicial control, using that expression in the narrower sense for which counsel for the corporations contended. It is said that the Corporation act could not have contemplated the use of the corporate books in criminal proceedings, since at the time that act was passed the right to compel a corporation to produce its books in a criminal proceeding was doubtful. Whatever may be said of the privilege of a corporation against self-incrimination at the time the Corporation act was passed, it certainly

was never supposed that a corporation whose books contained evidence which would be important in a criminal proceeding against individuals, could not be compelled to produce those books for the purpose of affording such evidence. That right was as clearly recognized in 1896 as it can ever be, and I think this argument fails.

I am of opinion, therefore, that under our practice I ought to make the order. The questions which have arisen as to the rights of corporations under the bill of rights, to be protected against unreasonable searches and seizures, and the privilege against self-incrimination embodied in the bill of rights of the federal constitution do not arise in this case, since the prosecutor asks only for certain specified books and it is not claimed that the production of those books within the state will interfere with the business operations of these companies elsewhere. As far as I can see, the production of the minutes of the stockholders and directors cannot have the effect of hampering the business of these companies.

I will therefore sign the orders asked for by the prosecutor.