NOTT v. THOMSON.

1. MARRIED WOMEN'S CONTRACTS—INNOCENT ENDORSEE.—Where a married woman made her promissory note in terms that show that it was made with reference to her separate estate, an innocent endorsee for value before maturity has a right to rely upon the statements in the note, and the maker is estopped from denying them against such endorsee, unless she proves that he knew them to be untrue. Knowledge by the payee will not affect the endorsee.

2. EVIDENCE.—Where a party purchases fertilizers from the agent of a guano company, and gives a promissory note in payment to the agent in his own name, who transfers it to another by endorsement, in action by the endorsee against the maker—testimony as to whether the agent had settled with his principal, is irrelevant.

3. PAPERS IN JURY ROOM.—There is no error in permitting the note in suit, with a calculation of the interest due thereon, to be taken by the jury into the jury room.

Before WALLACE, J., Spartanburg, October, 1890.

Action by Jane E. Nott, executrix of J. A. Corry, against Jessie M. Thomson, commenced February 19, 1887. The opinion states the case.

*Messrs. W. W. Thomson* and *R. W. Shand,* for appellant.

*Mr. R. K. Carson,* contra.

March 15, 1892. The opinion of the court was delivered by Mr. Justice McGowan. This was an action against the defendant, Jessie M. Thomson, a married woman, upon a promissory note, as follows : "For value received in fertilizers used on my plantation in 1884, and furnished at my request, I promise to pay T. Davenport, or order, on or before December the 1st, 1886, the sum of two hundred and forty-seven 60–100 dollars, with legal interest from date, this 1st of March, 1886. (Signed) Jessie M. Thomson," and endorsed "T. Davenport." The defendant admitted her signature to the note. The plaintiff proved the signature of T. Davenport, transferring the note to James A. Corry, the testator of the plaintiff, and rested.

The defendant offered in evidence a paper, of which the following is a copy: "For and in consideration of the sum of $75 paid me by Mrs. Jessie M. Thomson, the receipt whereof is hereby acknowledged this 1st March, 1886, and in further consideration that others received the benefit of fertilizers charged but never received by Mrs. Thomson, in consideration of the foregoing I, T. Davenport, do hereby covenant and agree to release all claim of right of action arising from the note of $247.60, executed to me by Mrs. Jessie M. Thomson on March 1st, 1886, and for the aforesaid consideration I hereby covenant and consent neither to sue the said Mrs. Thomson upon her said note of $247.60, dated March 1st, 1886 (my only note against her), nor to convey, bargain, or assign the same to any person whomsoever. Entered into at Gaffney City, March 1st, 1886, as witness my hand and seal the date above given, &c. (Signed) T. Davenport. [L. S.]

It seems that Davenport was in some way connected with the sale of commercial fertilizers; that as Mrs. Thomson had a plantation of her own, he had let her have some fertilizers for use, as alleged, upon her own place, for which he sued her; and while this case was pending they compromised, and the note here sued on was given by her in consideration of the first action being discontinued. Davenport was called as a witness by the defendant,

and he testified that he assigned the note to James A. Corry, the testator of the plaintiff, who was a lawyer, for professional services rendered; that this was the day after he executed his covenant with Mrs. Thomson not to sue or transfer the note, and that Corry was not aware of that covenant at the time the note was assigned to him. Whilst on the stand, Davenport was asked whether "he had settled his accounts with the guano company for which he was agent," which was ruled to be inadmissible, and the defendant excepted.

The judge charged, among other things, "When a negotiable instrument is transferred from one holder to another before maturity, then the purchaser, the man who holds it second hand, takes it cleared of every defence against it by the man who signed it. That has long been the rule in commercial law, considered necessary for the safety of commercial transactions. * * * That state of facts being proved to your satisfaction, on an ordinary note, the plaintiff would be entitled to recover. But where the action is against a married woman, he must go a step further and show that that note was given for the benefit of her estate; because the contracts of a married woman generally are illegal and not enforceable unless they are given for the benefit of her separate estate. Now, our Supreme Court have held that a contract for the benefit of a married woman is sufficiently proved when it is admitted in the instrument signed by her, and that she will not be allowed to show that it was not; that if it is admitted in the body of the instrument, that is proof complete and sufficient that it was for the benefit of the separate estate, and so far as that goes, would entitle the plaintiff to recover."

The defendant made several requests to charge, which were charged or declined, as follows: First request: "That J. A. Corry took the note subject to all the legal defences thereto, and this doctrine still holds good, though said Corry was an innocent assignee for value." *Charge:* "Of course, I cannot charge that. Whether he took it subject to all the legal defences or not, would depend upon whether he knew that there were legal defences existing at the time he took it. If he did not know it, then he would not be bound by the legal defences, as I have explained. Whenever there are circumstances connected with the transac-

tion itself that would suggest to the purchaser of a note of this sort, that there might be legal defences, he then is put upon the inquiry, as it is called; then that would be equivalent to notice of the legal defences. But it must not be something general in its nature about the condition of the party one way or another, but connected with the transaction itself, that would suggest to a reasonable man that there is something wrong here," &c.

Second request: "That the assignment of the note in issue to J. A. Corry by T. Davenport was void, by reason of an injunction forbidding the same." *Charge:* "I cannot charge that."

Third request: "That a covenant not to sue or to convey a note estops a party from doing what he bound himself not to do under seal." *Charge:* "It would estop Davenport, but nobody else who took the note without a knowledge of that release."

Fourth request: "That equities arising out of settlements and purchases work a complete estoppel between the parties." *Charge:* "Between the original parties, not between the maker of the note and the assignee."

Fifth request: "That misappropriation by an agent works also an estoppel." *Charge:* "That has no relation to this case, because no agency has been proved."

Sixth request: "That if a vendor assigns to another a note for the purpose of putting same beyond the reach of creditors, such assignment is void." *Charge:* "I do not charge that, because there is nothing to show that the request is applicable to this case. The only evidence is that the note was assigned to pay a debt for professional services, which was a legitimate transaction."

Seventh request: "That if the original cause of action made the consideration rightfully due a partnership, only the members of the partnership can sue or convey the note." *Charge:* "As a legal proposition that would be true. There is no proof here that this note was held by a partnership. Mr. Davenport testified that the note was his individual property."

Eighth request: "That commercial fertilizers sold in South Carolina must bear 'a tag,' stating certain particulars required by statute, without which the defendant must prevail in a suit for fertilizers." *Charge:* "That has no relation here. We have

nothing to do with fertilizers in this transaction, simply a promissory note."

Ninth request: "If a purchaser knows of an improper application of a note to his own benefit, then the purchaser is not protected and cannot recover in a suit upon such note." *Charge:* "There is no proof to make that applicable to this case."

Tenth request: "An assignee of a note must show a valid assignment by the record before he can sue in his own name." *Charge:* "That used to be the law, but it is not now."

Eleventh request: "A note under seal and non-negotiable, must be assigned under the provisions of the act, and in accordance with the act." *Charge:* "I do not charge you that. It is not the law."

Twelfth request: "When a note is taken in the settlement of an account, and the payee transfers the note for value, the original cause of action is destroyed." *Charge:* "I do not think that has any relation to this case; but it may or may not be, according to the circumstances of the case."

Thirteenth request: "Plea of purchaser *bona fide* without notice requires three essentials: (1) payment of the purchase money; (2) legal title or the best title to the note; (3) *bona fide* and without notice." *Charge:* "That is so."

Fourteenth request: "If the consideration rendered the note due to the partnership, then only members of the partnership can sue." *Charge:* "There is nothing here that would make that request applicable to this case."

Fifteenth request: "That proof showing that the defendant, Mrs. Jessie M. Thomson, was a married woman at the date of the execution of the note in suit, it was incumbent on the plaintiff to show that such note was taken for the benefit of her separate estate before they can recover." *Charge:* "I have already explained that to you, and I will repeat, in order that you may remember, that in an action, when brought against a married woman, it is not only necessary for the plaintiff to prove that she executed the instrument upon which he brings the action; but he must go further, and prove that the contract was for the benefit of her separate estate. The plaintiff says here that Mrs. Thomson admitted in this paper that it was for the use of her

30—35

separate estate. If she so admitted it, she would be estopped from denying it on the trial. That is all," &c.

The jury found a verdict for the plaintiff for the amount of the assigned note; and the defendant appeals to this court upon numerous exceptions (23 in number), many of which are substantial duplications, and as they are all in the "Brief," we will not attempt to consider them *seriatim.* We think the real points in the case, as taken from the argument, may be covered by two or three propositions.

(1) It is insisted that the judge erred in holding Mrs. Thomson bound by the statement in her note, without regard to whether or not Davenport was thereby misled. As we understand it, a creditor, when he sues a married woman, must show that the debt was contracted for the benefit of her separate estate; but if she admits that in terms, this admission, under the doctrine of estoppel, stands for proof, and the plaintiff has proved his case. But if the married woman contests the estoppel, the *onus probandi shifts,* and she must show that by such admission he was not misled. *Brown* v. *Thomson,* 31 S. C., 437. Now, if Davenport had sued Mrs. Thomson, it may possibly be that the recitals in his covenant not to sue would have relieved Mrs. Thomson from the consequences of her own declarations. But that could have no application to Mr. Corry, who purchased the note for value, before due, and without any notice of the covenant. Mrs. Thomson signed and put into circulation a paper in its nature negotiable; she placed upon its face a statement that it was free from all objection in respect to her condition as a married woman. At the time she made the covenant arrangement with Mr. Davenport, she did not take up the note, but still allowed it to remain in circulation, with her endorsement on it addressed to all who might receive it in the course of business. The covenant arrangement was private, but the note from its very character was addressed to all the world. The note with her statement on its face went to Corry, and when it appeared that she had signed it, the case was made out, and it was for her to show that Corry knew that her representation was not true.

(2) But it is further urged that the judge should have held that the knowledge of Davenport, which, in an action against Mrs.

Thomson, would possibly have deprived him of the benefit of an estoppel, should have been imputed to Corry, who purchased the note from him in the course of business. We are unable to see clearly the ground on which the proposition rests; it seems to assume that in respect to the note, Mrs. Thomson can have but one creditor, Mr. Davenport, the payee, when the terms and character of the note made any one her creditor, who, without notice and *bona fide* paid value for it before due. It seems to us that the proposition is not in accord with the fundamental principle of commercial paper, which is that defences which might be made between the original parties "are not admissible against a *bona fide* holder for value before maturity and without notice." 2 Am. & Eng. Encycl. L., 360, and authorities; and *National Bank* v. *Anderson*, 32 S. C., 538.

(3) We think the judge was right in excluding all testimony as to the condition of Davenport's business with the companies, if any, whom he represented as agent in the guano business. Mrs. Thomson dealt only with Davenport, and executed the note to him individually, and she could not be heard to impeach that transaction.

We cannot think that there was error of law in allowing the note sued on, with the calculation of interest, to go to the jury.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.