JOHANNA MOERSDORF, ADMINISTRATRIX, &c., PLAINT-
IFF, DEFENDANT IN ERROR, v. NEW YORK TELE-
PHONE COMPANY AND HUDSON TELEPHONE COM-
PANY, DEFENDANTS, PLAINTIFFS IN ERROR.

Argued March 7, 1913—Decided June 18, 1913.

1. Where a telephone company issues an express or implied invi-
tation to linemen in the municipal employment to go upon its
poles, it owes them a duty to use reasonable care to see that such
poles are reasonably safe for such use, and for a neglect of this
duty a liability arises to respond in damages for a resulting
injury.

2. Where a telephone company has a pole in the public highway as
a part of its telephone system, under a franchise from the munic-
ipality upon condition that it maintain such pole not only for
its own use but also for the use of the municipality, there is a
clear invitation by such company to the appropriate employes
of the municipality to go upon such pole to the extent usual and
necessary for its use by the municipality in the manner con-
templated.

3. Under such circumstances and in the absence of express authority
in the franchise grant by the municipality so to do, if the com-
pany in the exercise of such franchise, instead of erecting its
own poles, uses those of another company or uses abandoned
poles which it finds in the highway, the condition or stipulation
in favor of the municipality will attach to such poles so used
with the same effect so far as such invitation is concerned as if
such poles were the property of such company.

4. Under schedule A, section 72 of the Practice act, 1912 (*Pamph.
L., p* 397), where, upon an appeal from a judgment against two
defendants, it appears that the only question with respect to
which the decision is wrong and requires a new trial, is one
involving the liability of one of the defendants only, and that
it is entirely separable from the question upon which the lia-
bility of the other defendant depends, which was decided cor-
rectly, the judgment against the latter defendant will be affirmed,
and a reversal and new trial granted in favor of the former
defendant only.

On appeal from the Supreme Court, Hudson Circuit.

Frank E. Moersdorf, plaintiff's decedent because of whose
death suit is brought, was a lineman in the employ of the
city of Jersey City in its fire alarm department, and was

killed while in the performance of his duties in repairing
fire department wires, by the falling of a pole erected in a
public highway (Jersey avenue), upon the top bar of which
such wires were strung, and at the top of which he was work-
ing.   The pole fell because it was rotted off at a point a
few inches below the surface of the ground and of the flag
or concrete sidewalk pavement which surrounded it.   The
pole "looked all right" to anyone looking at it, and the defect
could only have been discovered by removing the dirt and
probably the flag or concrete pavement at its base to the
depth of a few inches and then boring or thrusting into the
pole a bit or sharp bar, which is the method customarily em-
ployed by telephone and telegraph companies in inspecting
their poles to discover defects of this character.   Neither of
the defendant companies made any inspection of this pole.
It is not customary for linemen before climbing a pole to
make an inspection of this kind if the pole "looks all right."

At the time of the accident the regular service telephone
wires of one of the defendants, the New York Telephone
Company, and the wires of the fire alarm service and the
police alarm service of Jersey City were strung upon the
pole.   It did not appear who originally erected the pole, but
the pole was stenciled with the initials of the other defend-
ant, the Hudson Telephone Company, which stenciling, ac-
cording to an ordinance of Jersey City, indicated ownership
in that company.   The Hudson Telephone Company had,
however, removed its wires from the pole five years prior to
the accident and had not since occupied it, but it had given
no notice to the city of Jersey City of any abandonment by
it of the pole.   The wires of the New York Telephone Com-
pany, which were on the pole at the time of the accident, had
been placed there two or three years prior thereto.   It does
not appear whether this company had or had not other
wires on the pole prior to that time.   It had no written or
verbal contract or permission from the Hudson Telephone
Company for the use of the pole, but it was the owner in-
directly of a majority of the stock of that company.   The
ordinance whereby the New York Telephone Company ac-

quired its franchise to construct and maintain its poles, wires and plant upon certain public streets of Jersey City, including specifically the street (Jersey avenue) in question, contained a provision that "the city shall have the right to use and occupy for its fire alarm and police alarm service and all additions thereto, without charge, the top arms upon all poles of said company now or hereafter to be erected," &c. The ordinance granting the franchise to the Hudson Telephone Company contained no such provision. A subsequent ordinance granting the Hudson Telephone Company the right to lay underground conduits on certain streets did provide for the use by the municipality of one of its conduits, but the pole in question was not a part of any such conduit system.

For the plaintiff in error, New York Telephone Company, *Edward A. & William T. Day.*

For the plaintiff in error, Hudson Telephone Company, *Raymond, Mountain, Van Blarcom & Marsh.*

For the defendant in error, *Warren Dixon.*

The opinion of the court was delivered by

WHITE, J. The evidence fully justified the finding of the jury that the decedent was not guilty of contributory negligence and that he came to his death as the result of someone's negligence in the failure to "inspect" the rotten pole upon which his duties in the service of the city required him to work. The only questions raised by the appeal requiring consideration, therefore, result from the refusal to nonsuit and to direct a verdict in favor of the two defendants, respectively, and from the portion of the charge hereinafter referred to.

It is, of course, the duty of any one owning or maintaining a telephone pole in a public highway to use due diligence to prevent its becoming so weakened by decay as to be in danger of falling and injuring anyone lawfully upon the highway or

elsewhere. For a neglect of this duty a liability arises to respond in damages for a resulting injury.

A different question arises, however, where, as in this case, it was not one of the general public passing along the highway, or upon adjacent property, that was injured, but a lineman in the employ of the city, who climbed the pole and whose superimposed weight at its top doubtless was the immediate occasion of its giving away. Under such circumstances and in this case the inquiry becomes one as to the existence and nature of an invitation or permission from these defendants, or one of them, to the lineman to climb this pole. If he did it without invitation from them and was a mere volunteer or trespasser, of course, they (not having wantonly nor willfully injured him) cannot be held liable. *Delaware, Lackawanna and Western Railroad Co.* v. *Reich,* 32 *Vroom* 635. So, if he were a mere licensee, acting without invitation or right, except by virtue of a permission given without interest in or consideration, financially or otherwise, moving to the one who gave it, but for the sole accommodation of the licensee, no liability arises. *Fitzpatrick* v. *Glass Manufacturing Co., Id.* 378; 29 *Cyc.* 442.

If, however, he was there upon an invitation, expressed or implied, to go there by the way and at the time he did go, the parties issuing the invitation were in duty bound to use reasonable care to see that so far as that way was their way, it was reasonably safe for him to use. *Phillips* v. *Library Company,* 26 *Vroom* 309, and cases therein discussed.

This doctrine, which is established by abundance of authority, leads to the inevitable conclusion that where a telephone company has a pole in a public highway, as a part of its telephone system, under a franchise from the municipality upon the condition that it maintain such pole not only for its own use but also for the use of the municipality, there is a clear invitation by such company to the appropriate employes of the municipality to go upon such pole to the extent usual and necessary for its use by the municipality in the manner contemplated. Under such circumstances the city's lineman is neither a trespasser nor a licensee. He is

not a trespasser because he was properly on the pole in his master's behalf under granted right; nor was he a mere licensee, because the right or privilege which he was exercising was not a voluntary permission for the sole accommodation of his master or himself, but was a contractual right of mutual interest to both parties. It was of interest to the municipality in securing them a wire stringing privilege for the public service, and it was of interest to the company in that it formed a part of the consideration upon which said company received the grant of its franchise rights.

It is contended by the defendant, the New York Telephone Company, however, that there was no invitation issued by it because it was not the owner of the pole, and, as it claims, had no right to remove or replace it. The answer to this contention is that the company had no right to string its wires on Jersey avenue at all, except by virtue of a grant by ordinance from the city of Jersey City, which ordinance, in consideration of the grant, required that the city also should have the right to string its fire and police alarm wires upon the "poles of said company, now or hereafter erected." The language of this ordinance is significant. It does not say "the poles belonging to said company," nor does it say "the poles which said company has heretofore erected or shall hereafter erect." All that it specifies is that the city may use "the poles of said company," namely, the poles which shall form a part of the exercise of the franchise granted to maintain and operate a telephone line on Jersey avenue. If the company chose to carry out its franchise by using poles of some other company, or by using old abandoned poles which it found in the street, that was its affair. For the purposes of this provision, however, such poles, so incorporated into the exercise of the franchise granted it under the condition in question, became "the poles of said company" and were entitled to be so treated by the city making the grant. The grant of the franchise nowhere expressly authorizes the company to use another company's poles in exercising the franchise. If it had done so it would doubtless have stipulated for the privilege in question on the poles so used and for the

liability of the grantee company for their upkeep while in such use. In the absence of such express authority, therefore, it must be assumed that, so far as this stipulation was concerned, the grant contemplated the exercise of the franchise upon the company's own poles, or upon poles to be treated and considered the same as if so owned. It is obvious that the city making the grant intended to secure for itself a fire and police alarm wire stringing privilege coextensive with the street limits covered by the franchises granted. This purpose and contract would be evaded and defeated if the grantee company might string its wires on the poles of another company not subject to such condition and then claim that such poles were not the poles of the grantee company within the meaning of the grant. To permit it to thus divorce the exercise of the franchise granted from the performance of the condition upon which it was granted would, we think, be a plain violation, not only of the purpose, but also of the terms of the grant.

It is claimed that this view is contrary to the decision of the Supreme Court in *Telephone Company* v. *Speicher,* 30 *Vroom* 23, but we think not. It is true that the opinion in that case, while conceding the probable existence of an invitation for the use of its own poles under such a stipulation in the franchise of a company, suggested, *obiter,* a doubt of the existence of such an invitation where the poles of another company were used, but the point actually decided and so expressed in the opinion in that case was, that conceding that such an invitation to use such other company's poles did exist, it did not extend to the use, in carrying a lineman's weight, of a cross-bar on the pole, which was obviously never intended for any such use.

We think, therefore, that as to the New York Telephone Company, the motions for a nonsuit and for the direction of a verdict in favor of the defendant were properly refused, and that no errors appear in the charge of the learned trial judge with reference to the liability of that company.

A different situation, however, develops as to the other defendant, the Hudson Telephone Company. Whether it

was or was not the original owner of the pole and had abandoned it several years before the accident (both of which are disputed questions), it clearly appears that the grant from the municipality to this company of the right to exercise its franchise on Jersey avenue did not contain any condition or stipulation that the municipality should have the right to use its poles for the department, fire or police alarm wires. This important fact, the learned trial judge seems to have overlooked in his charge to the jury, wherein (speaking of the Hudson Telephone Company) he said: "It was a part of the consideration which the city received when they were given the franchise for the purpose of using the streets to allow the city to use the poles for the purpose of its wires, and, of course, if the city had the right to use them for the purpose of stringing its wires, it goes without saying that it was necessary from time to time for linemen to go up on the poles to do whatever might be necessary to do in maintaining the wires on the poles. So, if that pole was at any time erected by the Hudson Telephone Company, and no notice had ever been given by them to the city, or the city had not accepted abandonment, I will say to you that they cannot in this case relieve themselves from responsibility by saying that they had not used it for the use of their wires for a number of years past." In other words, the jury were told that the Hudson Telephone Company was liable, because its franchise grant contained a stipulation which gave rise to an implied invitation to the plaintiff, as a city employe, engaged in repairing the city's wires, to go up the pole in question, whereas, as a matter of fact, the franchise grant contained no such stipulation. This was, of course, an error, injurious to this defendant, the Hudson Telephone Company, and necessitates a reversal of the judgment as to it, because quite irrespective of evidence from which the jury may or may not have found the existence of other circumstances, establishing an invitation by this company, it was affirmatively established that the circumstance did not exist which the trial judge told the jury did exist and did give rise to an implied invitation.

It is urged under the authority of *Peterson* v. *Middlesex and Somerset Traction Co.,* 42 *Vroom* 296, that there cannot be a reversal as to one of these defendants without a reversal as to both of them. The present case, however, was brought under the Practice act, 1912 (*Pamph. L., p.* 397), which provides (schedule A, § 72) : "In case a new trial is granted it shall only be a new trial of the question or questions with respect to which the verdict or decision is found to be wrong, if separable." That the questions of liability of the New York Telephone Company by reason of the invitation resulting from the stipulation in the grant of its franchise, and of the Hudson Telephone Company by reason of an invitation not resulting from any such stipulation in the grant of its franchise, because there was none, but if at all, from entirely independent circumstances, are separable, is too evident to require discussion. The decision is wrong only with reference to the ground of liability, if any, of the Hudson Telephone Company, and the scope of the new trial is in consequence limited by the Practice act, 1912, to this question. The decision with reference to the entirely different and separable question involved in the liability of the other defendant, the New York Telephone Company, is right and will stand.

The judgment against the defendant, the New York Telephone Company, is therefore affirmed, with costs, and the judgment against the defendant, the Hudson Telephone Company, is reversed and a *venire de novo* awarded as to that defendant only.

The following was the vote of the court in the case against the New York Telephone Company :

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ. 13.

*For reversal*—None.

In the case against the Hudson Telephone Company:

*For affirmance—*None.

*For reversal—*THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ. 13.