THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, APPELLANT, v. THE JERSEY CITY, HO-BOKEN AND PATERSON STREET RAILWAY COMPANY, RESPONDENT.

Argued June 20, 1913—Decided November 17, 1913.

1. A statute or ordinance, which requires a street railway company *to keep and maintain in good repair* the paving or other surface material of so much of the several public highways, through which its road is constructed, as is occupied by or adjacent to its tracks, does not impose upon it any obligation to contribute to the cost of *repaving* any of such highways. And this is so even if the cost of maintenance is greater than the cost of repaving would be.

2. An agreement, by a street railway company, to pay a part of the cost of repaving a specified portion of a public highway through which its tracks are laid does not create any liability to con-tribute to the expense of repaving other portions of such highway.

3. An unfounded claim can never be given . vitality by the mere failure of the person against whom it is made to repudiate it.

---

On appeal from a judgment of the Supreme Court.

For the appellant, *John A. Dennin.*

For the respondent, *William D. Edwards, Gilbert Collins* and *Frank Bergen.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.  This action was brought by the board of freeholders to recover from the defendant com-

pany a portion of the cost incurred by the board in the laying
of a granite block pavement upon a portion of the Paterson
plank road, a public highway of the county, through which
the company operates an electric railway. This railway was
originally constructed by the Jersey City, Hoboken and Ru-
therford Electric Railway Company, a corporation organized
in 1893, under the Street Railway act of 1886. *Comp. Stat.,*
*p.* 4998. The eighteenth section of that act provides that
every company incorporated under it "shall keep in repair,
to the satisfaction of the local authorities, the paving, upper
planking or other surface material, of the portion of streets,
roads and bridges occupied by its tracks, and if such tracks
occupy unpaved streets or roads shall, in addition, so keep in
repair eighteen inches on each side of the portion occupied
by its tracks." The Jersey City, Hoboken and Rutherford
Electric Railway Company, before building its railway, ap-
plied to the board of freeholders of Hudson county for per-
mission to construct it along the Paterson plank road, and
such permission was granted upon certain conditions, one of
which—and the only one pertinent to the present controversy
—was that the tracks of its railway should be constructed and
maintained in such manner as to afford all persons, vehicles,
and the like, all proper and reasonable facilities for crossing,
entering on and leaving the same, and that the portions of the
highway occupied by its railway should be kept and main-
tained in a good state of repair at the expense of the com-
pany, so as that at all times it should be convenient and safe
for public travel. This condition was agreed to by the com-
pany, and its road was constructed. In 1899 the property
and franchises of this company became vested in the present
defendant, and it thereupon assumed the performance of all
the duties and obligations which rested upon its predecessor,
either by statute or by contract; and the principal question
in dispute was whether, by virtue of section 18 of the act of
1886, or by the condition attached to the grant of permission
to construct the railway on the Paterson plank road, the de-
fendants were bound to pay to the board so much of the total
cost of laying the granite block pavement as represented the

sums paid for laying it between the tracks of the railway, and adjacent thereto, or any other proportionate part thereof.

In the case of *Dean* v. *Paterson,* 38 *Vroom* 199, one of the questions involved and decided was whether or not, under the provisions of an ordinance requiring a street railway to keep and maintain the portion of a street inside its rails, and for a designated distance outside of them, in good and sufficient repair, the company was under a legal obligation to repave within those limits with a new and different material selected by the municipality. It was held by the Supreme Court that the duty to keep in repair did not carry with it the obligation to pay a proportion of the expense of repaving. And, on review by this court, the rule thus laid down was expressly approved. *S. C. on error,* 39 *Id.* 664. On the trial below the court, following this rule, held that the present action could not be maintained, and directed a nonsuit. The judgment entered pursuant to this direction is brought up by the present appeal.

It is now urged by counsel for the appellant that the rule in Dean *v.* Paterson is opposed to that adopted by the courts of some of our sister states, which hold that the duty to repair carries with it the duty of paying a proportionate part of the cost of repaving when the public interests require that a street shall be so improved; and that, therefore, it should now be repudiated by us. But this fact (conceding that counsel is right in the view which he takes of the effect of the decisions to which he refers) does not afford any reason for our departing from a rule of construction which we have once laid down upon a full consideration; for the most that can be said is that in determining the construction to be given to language which is fairly susceptible of one or the other of two meanings, different courts have held diverse views thereon. As was said by Chancellor Kent, in discussing the doctrine of *stare decisis,* "When a decision upon a point of law has been made upon solemn argument, and upon mature deliberation, the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions by it. When a rule has once been deliberately adopted

and declared it ought never to be disturbed by the same court, except for very urgent reasons, and upon a clear manifestation of error." 1 *Kent Com.* 475. To the same effect are our own decisions in *State* v. *Taylor,* 39 *Vroom* 276, and *Bowman* v. *Freeholders of Essex,* 44 *Id.* 543.

The judgment of nonsuit cannot be reversed upon the ground that the rule of law applied by the trial court was unsound.

Recognizing that the rule in *Dean v.* Paterson must be accepted as the law, for the purposes of the trial, counsel for the board of freeholders sought to avoid its effect by attempting to prove that the obligation of the defendant company to keep in repair that portion of the highway designated by the statute, and by the resolution of permission, could not be kept, except by the expenditure of moneys largely in excess of the proportionate cost of laying down the new pavement. Upon objection, testimony tending to show this fact was excluded, and it is urged that in this there was harmful error. The offer was properly overruled. The obligation of the company was to repair. The cost to it of doing so, no matter how burdensome, was inconsequential. It could not escape that obligation by showing that it was to the public interest to have the whole street repaved, and that it was willing, if the board of freeholders would do this, to agree to pay so much of the cost thereof as represented the expense incurred by the laying of the new pavement upon that portion of the street which it was obliged to keep in repair. In other words, it could not relieve itself of an onerous duty which it had assumed by doing something else outside of the scope thereof, except by consent of the party for whose benefit the duty was to be performed. And the converse is equally true. The board of freeholders could not, without the consent of the defendant company, substitute another and less onerous duty in the place of that which the company had obligated itself to perform, and then compel it, against its will, to discharge that substituted duty. It follows from this that the offered testimony was wholly irrelevant.

The testimony just adverted to having been excluded, counsel then attempted to show an implied agreement on the part of the company to pay its proportionate share of the improvement. He did this by offering in evidence two written agreements entered into between the parties to this suit, by the terms of which the defendant company agreed to pay a part of the expense of repaving certain other portions of this same highway; contending that they showed a course of dealing between the parties which estopped the defendant from denying that it was liable to pay its fair proportion of the work involved in the present litigation. This offer was also excluded, and its exclusion is now urged as a ground for reversal. We are unable to perceive the logic of counsel's contention. The conclusion to be drawn from these writings, as it seems to us, is that when the company was willing to have substituted for its duty to repair an obligation to pay a portion of the cost of repaving the highway, it exhibited that willingness by entering into an agreement which bound it to the performance of that substituted duty to the extent shown by the agreement, and, by its conduct, indicated that no such substitution should be imposed upon it except by its formal agreement to that effect. This testimony, also, was properly excluded.

It was further sought to show such implied agreement by introducing conversations had by the engineer of the board with the general manager of the defendant company, with its chief engineer, and with the assistant to the president, from which it appeared that these officers had knowledge of the fact that the improvement was about to be undertaken, and afterward that the work was in progress, and knew that it was being done under a claim that the railway company was bound to pay its share of the cost. The argument is that it was their duty to communicate these facts to the defendant company; that it must be presumed that this duty was performed; and that the failure of the company to repudiate the claim that it was bound to pay a proportionate share of the cost of this improvement must be deemed to have been an

acquiescence in its validity. This contention is unsound. Even if it be conceded that knowledge of the claim of the board of freeholders made to these officers of the company is to be imputed to it, non-action on the part of the company, after being made aware of the appellant's claim, is not an acquiescence in its validity, for it was under no obligation to take action upon it until it was called upon to do so by the board. An unfounded claim can never be given vitality by the mere silence of the person against whom it is made. This testimony was also properly excluded.

No other ground for reversal having been urged upon us the judgment under review will be affirmed.

GARRISON, J. (concurring). I agree that the respondent was entitled to notice and an opportunity to perform its contract, and upon this ground vote to affirm the judgment brought up by this appeal.

WHITE, J. (concurring). I am unable to agree that *Dean* v. *Paterson,* 38 *Vroom* 199, controls this case. As to the doctrine of *stare decisis,* one thing is settled, and that is, that "The positive authority of a decision is co-extensive only with the facts upon which it is founded." *Reed* v. *Reed,* 114 *Mass.* 372; *Grimes* v. *Bryne,* 2 *Minn.* 89; *Southern Pacific Railway Co.* v. *Robinson,* 132 *Cal.* 408.

In Dean *v.* Paterson a municipality laid an improved pavement, not because it was necessary (which so far as appears it was not), in order to keep the street in proper repair according to the requirements of *then existing* traffic conditions, but as an improvement to the neighborhood, and for the benefit of adjoining real estate by inviting increased *future traffic;* and when the municipality assessed such real estate for such benefit, an owner attempted to escape a portion of his assessment by setting up a contract by the trolley company (whose tracks were on the street) with the municipality to keep part of the street in repair. The decision of the court, as limited by these facts, was that the new pave-

ment *under such circumstances* was not a "repair" within the meaning of the trolley company's undertaking. That was entirely true, and to that extent the precedent is a proper subject for the application of the doctrine of *stare decisis.* But to hold that it decides that a new pavement is not a repair *where in fact it is necessary in order to repair,* is, as it seems to me, to give it an unwarranted extension. That question was not before the court and did not receive that "solemn argument and mature deliberation" which, according to Chancellor Kent, justifies the application of *stare decisis.*

In the present case the new pavement is a repair. It is a repair because it is necessary in order adequately to repair. Traffic conditions have changed with the increase of population (doubtless largely induced by the installation of the trolley company's service and certainly to its financial benefit) so that the old dirt road cannot be made to answer the proper requirements of the present traffic. To contend that the parties to the contract only intended its obligation to continue while the old dirt surfacing would suffice, is, of course, absurd. They both knew the change would come. The existence of the franchise grant was not limited to the proper life of the old dirt surfacing, nor was the continuation of the obligation which formed its consideration so limited. It is perfectly evident that they were intended to continue together. As this court said, in *Moersdorf* v. *New York Telephone Co., 55 Vroom* 747, speaking of the grantee of a franchise: "To permit it to thus divorce the exercise of the franchise granted from the performance of the condition upon which it was granted, would, we think, be a plain violation, not only of the purpose, but also of the terms of the grant."

As I view it, therefore, where, as here, a trolley company has acquired its franchise from a municipality on condition that it keep a certain defined portion of the streets occupied by its tracks in proper repair for public traffic, and by reason of natural increase in population and traffic it has become necessary to abandon the old form of surfacing and to put down an improved or better form of pavement *in order to*

*keep the street in such repair,* the trolley company may be compelled to put down such improved pavement. This view has been adopted in Pennsylvania (*Borough of McKeesport* v. *McKeesport Pass. R. W. Co.,* 158 *Pa.* 447), and in New York (*Mayor, &c., of New York* v. *Harlem Bridge M. & F. R. W. Co.,* 186 *N. Y.* 304), and so far as I am able to find, is not in conflict with any decision in this state. I think it is controlling where a proper case exists and the proper ground is laid for its application.

It is said that the only remedy is by *mandamus,* but I cannot think that this is true. In *Rutherford* v. *Hudson River Traction Co.,* 44 *Vroom* 227, the Supreme Court held that *mandamus* was a remedy because of the public nature of the duty assumed, but I can see no reason why the contractual obligation may not also be enforced as such. This, it seems to me, is so because the assumption of the public duty by the trolley company does not relieve the municipality of the same public duty. Its officers may be indicted for its non-performance. It is no defence that someone else has contracted to perform this duty and that application for a *mandamus* has been made and has long been pending (during appeal) to compel the performance of that contract. The proper convenience of the public is superior to such excuses however well founded. The public is entitled to use its highway to-day and to look to its servants to have it in fit condition for such immediate use. The trolley company made its contract with full knowledge of this fact. It would, as it seems to me, be a strange doctrine which would hold the officers of a municipality up to indictment for failure to keep a highway in repair, and then would relieve the trolley company from liability under its contract to do so, if such officers in order to escape indictment went ahead and, after proper notice, made the repair because the trolley company refused to do it.

I cannot think the municipality is bound, under pain of forfeiture of its rights, to sit still while the public suffers unbearable inconvenience from an impassable street, until an application for a *mandamus* has been led by the defaulting

trolley company a leisurely round or so through the courts. I think a contractual interest remains in the municipality in the performance by the trolley company of the contract, and that there is no good reason why, after proper notice and default, it may not enforce the obligation as other contracts between other contractors are ordinarily enforced, viz., by doing the work and recovering the proper cost as damages for a breach.

The real trouble in the case at bar, as it seems to me, was in the failure of the municipality to notify the trolley company of the conditions and to call upon it to perform its contract to repair. Instead of doing this it went ahead and put down an improved pavement of its own selection, at its own price, and without opportunity to the trolley company to make its own contract for its portion at a price satisfactory to it and of proper materials of its selection. Clearly, the municipality could not do this and expect the trolley company to pay the cost. That, the contract did not authorize.

I concur, therefore, in an affirmance of the judgment of the Supreme Court, but not upon the ground (*stare decisis*) assigned by the learned trial judge therefor.

I am authorized to state that Mr. Justice Minturn concurs in these views.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ. 11.

*For reversal*—VREDENBURGH, J. 1.