BARTON SAVINGS BANK & TRUST COMPANY *v.* HELEN BICKFORD
ET AL.

February Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, and SLACK, JJ., and
BUTLER, Ch. Supr. J.

Opinion filed October 3, 1923.

*Husband and Wife—Bills and Notes—Effect of Negotiable In-*
*struments Act on Right of Married Women to Contract—*
*Estoppel of Married Women—When Regarded as Sui Juris*
*—Estoppel by Contract—Estoppel When Signing Note in*
*Terms "As Principal."*

1.  While ordinarily questions pertaining to promissory notes, made
    and delivered after the Negotiable Instruments Act became
    effective, are to be determined solely by its provisions, such
    statute has nothing to do with the policy of the State as to
    the contractual rights, privileges, and liabilities of married
    women, and does not repeal, modify, or enlarge the positive
    provisions of the statute relating to the right of married
    women to contract.

2.  In determining the liability of a married woman on a note signed
    by her, the statute relating to the right of married women
    to contract and the Negotiable Instruments Act must stand
    together, and each be given its true significance.

3.  The construction of a note and the liability of a married woman
    thereon, apart from the prohibited suretyship, are governed
    by the provisions of the Negotiable Instruments Act, so far
    as therein provided for.

4.  As an incident of the enlarged powers of a married woman under
    the statute, she may be estopped by her acts, conduct, or
    contracts, as to all things in respect to which she is *sui juris*,
    the same as any other person.

5.  A married woman is none the less *sui juris* to the extent of her
    enlarged powers under the statute when contracting with
    persons other than her husband, though her husband, or her
    husband and other persons, be joint, or joint and several,
    contractors with her.

6.  Estoppels by contract are of two kinds: Estoppel to deny the truth of facts agreed upon and settled by the terms of the contract, and estoppel arising from the acts done under or in performance of the contract.

7.  Where a married woman signed notes with her husband and another person, the terms of the undertaking therein reading, "We each as principal jointly and severally promise to pay," there being nothing in the notes indicating that she signed in any other capacity, as she had power to enter into such contracts, either as an interested principal or as an accommodation party for such other person, and having in terms bound herself as principal, she is estopped by contract from saying that she did not sign the notes in any other capacity than as surety for her husband's debts.

8.  In such a case, the form of her undertaking goes to the force and effect of the contract in its construction and operation, and evidence showing her to have been in fact only a surety for her husband, even with the plaintiff's knowledge at the time she signed, is incompetent and wholly immaterial, since showing such fact would vary the express terms of the undertaking.

ACTION OF CONTRACT upon certain promissory notes. There was no defense by defendant S. M. Bickford. His wife, defendant, Helen Bickford, answered that she had signed the notes in suit as surety for her husband's debts, and defended solely on that ground. Trial by jury at the March Term, 1921, Orleans County, *Wilson*, J., presiding. Verdict directed against defendant S. M. Bickford, and verdict directed in favor of defendant Helen Bickford. The plaintiff excepted. The opinion states the case. *Reversed, and judgment rendered against defendant, Helen Bickford.*

*W. H. Cleary, J. W. Redmond, E. A. Cook* and *W. W. Reirden* for the plaintiff.

Incident to the enlarged powers given to married women by statute, is the capacity to be bound and to be estopped by their conduct. G. L. 3521; *Seaver et al.* v. *Lang*, 92 Vt. 501; 10 R. C. L. 738, 745; *Smith & Co.* v. *Weeks*, 65 Vt. 566; *Sargent* v. *French*, 54 Vt. 384; *Rusk* v. *Fenton* (Ky.), 29 A. R. 413;

*Patterson* v. *Lawrence* (Ill.), 32 A. R. 22; *Shivers* v. *Simmons* (Miss.), 32 A. R. 372; *Dobbin* v. *Cordiner*, 4 L. R. A. 333.

Such estoppel relates as well to married women who have contracted by signing promissory notes. *Freeman* v. *Barron's Estate*, 92 Vt. 460; 10 R. C. L. 745, 805; note, *Spear* v. *Opfer et ux.* (Mich.), 2 L. R. A. 345; 2 Pom. Eq. Jur. 278; *Sexton* v. *Wheaton*, 8 Wheat. 229, 5 L. ed. 603; *Vogel* v. *Leichner*, 103 Ind. 55.

*Frank D. Thompson* for the defendant.

A married woman who has signed a personal obligation with her husband may show that she did so as surety for her husband's debt. *Wetmore & Morse Granite Co.* v. *Ryle*, 93 Vt. 245; *Bradley Fertilizer Co.* v. *Caswell*, 65 Vt. 231; *First National Bank* v. *Bertoli*, 87 Vt. 297, 300, 88 Vt. 421, 427; *Seaver* v. *Lang*, 92 Vt. 501, 509.

BUTLER, Ch. Supr. J.   The three promissory notes upon which the plaintiff seeks to recover are dated at Barton, Vermont, June 1, 1917, payable to the plaintiff or order at a fixed future time, all of which were past due when suit was brought thereon.  Each note is signed on its face by H. A. Harding, Helen Bickford, and S. M. Bickford.  The last two persons named were at the time of signing and now are husband and wife.  The notes in terms of liability are alike and read: "We each as principal jointly and severally promise to pay," etc.

Harding is dead.  S. M. Bickford made no defense, and judgment was rendered against him on a directed verdict.  Helen Bickford (hereafter referred to as the defendant) answered that she signed each of said notes as surety for her husband's debts and in no other capacity, and she defended solely on that ground.  To this answer no reply was filed but the question of estoppel was raised at the very outset, and it is apparent from the course of the trial, as shown by the transcript which is made controlling, that the parties and the court treated the case as though a reply by way of estoppel was in, and we treat it in the same way.

At the close of the evidence the plaintiff moved that a verdict be directed in its favor on assigned grounds, two of which were: That because of the language of the notes, promising

"each as principal," the defendant is estopped from claiming that she was a surety and relieved from liability; and that, because of the Negotiable Instruments Act she has established no defense. Before ruling upon this motion the court submitted to the jury three special questions: (1) Whether the defendant, Helen Bickford, signed the notes in question solely as surety for the debts of her husband; (2) Whether she signed them solely as surety for debts of Harding; (3) Whether she signed them as surety for debts of both her husband and Harding. The first of these questions the jury answered "Yes," and each of the others, "No." The court then overruled plaintiff's motion for a verdict, to which plaintiff excepted. Thereupon defendant moved that a verdict be directed in her favor, which motion was granted and exceptions saved; and on the latter verdict judgment was rendered for her, to which also exception was saved. As we construe the record these exceptions are based on the same ground as plaintiff's motion for a verdict. The two grounds upon which plaintiff relies as sufficient in law to require the granting of its motion are interactive and may be best considered together.

[1-2] Ordinarily questions pertaining to promissory notes, made and delivered after the Negotiable Instruments Act became effective, June 1, 1913, are to be determined solely by the provisions of that enactment, but that statute has nothing to do with the policy of the State as to the contractual rights, privileges, and liabilities of married women. It neither directly nor indirectly makes any reference to them nor to the provisions of the enabling statute. The Negotiable Instruments Act presupposes the paper to be such as the parties are in law capacitated to make and the courts to enforce. Its general terms cannot be said to repeal, modify, or enlarge the positive provisions of the statute giving married women the right to contract, with corresponding liability—subjects other than the negotiability of valid paper. Rules of construction do not permit it. *Raleigh County Bank* v. *Poteet,* 74 W. Va. 511, 82 S. E. 332, L. R. A. 1915B, 928, Ann. Cas. 1917D, 359; *Peoples Nat. Bank* v. *Schepflin,* 73 N. J. Law, 29, 62 Atl. 333. The two statutes must therefore stand together, and each is to be given its true significance when applicable to the determination of this case.

By the enabling statute a married woman is empowered to make contracts with any person in the same manner and to the same extent as if unmarried, except with her husband or affecting property in which he has marital rights. G. L. 3521; *Barrows* v. *Dugan's Estate*, 88 Vt. 441, 92 Atl. 927; *French* v. *Slack*, 89 Vt. 514, 96 Atl. 6. Except also that a married woman shall not become surety for her husband's debts other than by way of mortgage. G. L. 3523. And it has generally been held, when material to her defense in an action based on a contract entered into by her, that she may show she so contracted solely as surety for the debts of her husband, thus showing the undertaking on her part to be one void in law. *Bradley Fertilizer Co.* v. *Caswell*, 65 Vt. 231, 26 Atl. 956; *First National Bank* v. *Bertoli*, 87 Vt. 297, 89 Atl. 359, Ann. Cas. 1917B, 590; *Wetmore & Morse Granite Co.* v. *Ryle et al.*, 93 Vt. 245, 107 Atl. 109. But the right to invoke evidence for this purpose when material cannot be broader than her incapacity.

[3] The construction of these instruments and her liability thereon, apart from the prohibited suretyship, are to be governed by the provisions of the Negotiable Instruments Act (so far as therein provided for). This is fairly implied from the provision that in any case not provided for therein the rules of law and equity, including the law merchant, shall govern (G. L. 3060), and such is the intent of the Act. *Howard National Bank* v. *Arbuckle*, 92 Vt. 86, 102 Atl. 476; *Grapes* v. *Willoughby*, 93 Vt. 458, 108 Atl. 421.

What effect, if any, does the incapacity of the defendant to become surety for her husband's debts have on her defense to the notes in question?

This presents a question not before determined by this Court, since it involves the responsibility of a married woman on negotiable instruments signed on their face by a third person, herself, and her husband, wherein "each as principal jointly and severally promise to pay," etc. During the trial defendant was permitted to introduce evidence tending to show that she signed the notes as surety for her husband and in no other capacity. The reception of this evidence was seasonably excepted to on the same ground of estoppel as stated above in connection with plaintiff's motion for a directed verdict.

[4, 5]   One of the incidents of the enlarged powers of a married woman under our statute is that she may be estopped by her acts, conduct, or contracts, within such powers. *Smith & Co.* v. *Weeks,* 65 Vt. 566, 27 Atl. 197.   In other words, the doctrine of estoppel may be invoked against her as to all things in respect to which she is *sui juris,* the same as any other person. *Locklin* v. *Davis,* 71 Vt. 321, 45 Atl. 224.   And she is none the less *sui juris* to the extent of her enlarged powers when contracting with persons other than her husband, though therein her husband, or her husband and other persons, be joint, or joint and several, contractors with her.   *Reed* v. *Newcomb,* 59 Vt. 630, 10 Atl. 593; *Lane* v. *Bishop & Co.,* 65 Vt. 575, 27 Atl. 499; *Wetmore & Morse Granite Co.* v. *Ryle et al., supra.*

Consequently the fact that defendant's husband was a joint and several maker of the notes in suit does not change her liability thereon to the payee as a joint and several maker "as principal" with Harding, from what it would be if her husband were not a signatory thereto.   Under the statute, she was competent to enter into contracts such as are shown by these instruments, either for herself as an interested principal, or as an accommodation party for the purpose of lending her name to Harding, and let the facts be either way, she was competent to obligate herself thereon in terms absolutely requiring her to pay the same, thereby making herself primarily liable within the meaning of G. L. 2868.   This the defendant did by signing the notes in terms "as principal," thereby in unmistakable language assuming to contract and contracting in that character.   And her engagement was by statute that she would pay the notes according to their tenor.   G. L. 2929.

Defendant expressly states in the notes that she signed them "as principal," and there is nothing on their face indicating that she signed them in any other capacity.   To permit her (beyond the prohibited suretyship) to give evidence that she signed them in some other capacity would be in violation of the familiar rule against the admission of parol evidence to change or vary either the terms or legal effect of a written instrument, a rule which obtains even though the payee had knowledge that in fact she was signing in some other or different capacity.   *In re Barron's Estate,* 92 Vt. 460, 105 Atl. 255; *Arnold* v. *Sprague,* 34 Vt. 402.   In *Claremont Bank* v. *Wood et al.,* 10 Vt. 582, the

172 BARTON SAV. BK. & TR. CO. *v.* BICKFORD ET AL. [97

language of the note in question was like the language of the notes in the instant case, "We each as principal, jointly and severally promise to pay," etc. It was held that the signers of the note, as between them and the payee, were to be regarded as principals and could not be permitted to show otherwise, even though the payee took the note with knowledge that one of the signers (óne Judd) was in fact a surety or accommodation signer, the Court saying, "And since Judd has seen fit expressly to avow himself a principal in the note, and thereby, so far as the plaintiffs were concerned, to renounce the character of a surety with the privileges incident to it, we are not at liberty to absolve him from the consequences. To hold him still entitled to those benefits, which he openly disclaimed at the time of entering into the contract, would be to vary and control its intended operation, and, in effect, to enforce a contract which the parties never made." In *Benedict* v. *Cox*, 52 Vt. 247, the note in question, having two signers, was joint and several and written "each as principal, promise to pay," etc. In the trial the defendant offered to prove (1) that he was in fact a surety in the note, and that he never received any part of the consideration thereof; and (2) that the claim on which the note was based, was a debt against Austin, the other signer of the note, and that he was induced to sign the note by a contemporaneous parol agreement between the plaintiff, the defendant, and Austin, that the defendant should be held as surety only six months; and that the plaintiff accepted the note subject to those conditions. The evidence was excluded. This Court held that, by the terms of the note, as to the creditor both of the signers were principals, referring to the case of *Claremont Bank* v. *Wood et al., supra,* as an ever recognized authority. It was further held that the defendant must be treated as having waived, by the express terms of his contract, all rights incident to the relation of surety, "so far as pertains to the interpretation and enforcement of the contract." Reference being there made to *Dunham* v. *Downer*, 31 Vt. 249, and *Sprigg* v. *Bank of Mount Pleasant*, 10 Pet. 257, 265, 9 L. ed. 416. In the Dunham case the Court said, "It is no doubt sound law, that where the principal and surety both enter into a joint or a joint and several direct undertaking for the payment of a sum of money, 'as principals,' the giving of time to the principal cannot avail the surety as a defense at law," and

that "In such a case, the doctrine of estoppel operates upon the surety." In the Sprigg case, a writ of error, reported in 10 Pet. 257, 9 L. ed. 416, the Court, speaking through Mr. Justice Thompson, said: "When one who is in reality only a surety, is willing to place himself in the situation of a principal, by expressly declaring upon his contract that he binds himself as such; there cannot be any hardship in holding him to the character in which he assumes to place himself. As to that particular contract, he undertakes as a partner with the debtor; and has no more right to disclaim the character of principal, than the creditor would have to treat him as principal, if he had set out in the obligation that he was only surety." The result was an affirmance of the judgment below in favor of the creditor. A bill in equity was then brought seeking to have that judgment at law enjoined, and the case was again before the Federal Supreme Court as reported in 14 Pet. 201, 10 L. ed. 419, the same Justice writing the opinion. The Court said: "When this case was before the court on the writ of error, the effect and operation of the words, 'as principals,' contained in the single bill discounted at the bank, were fully considered; and it was decided that they operated as an estoppel, and precluded the defendants from going into evidence to show that he was only surety in the single bill." The Court further saying, "But, admitting that the bank knew that Yarnell & Company were the principal debtors, this would not exonerate the other obligors from their responsibility as principals, in violation of their express contract." The injunction was refused and bill ordered dismissed. In *Menaugh* v. *Chandler*, 89 Ind. 94, the promissory note in suit contained a stipulation whereby all the signers agreed to be held "as principal debtors." The court held that such stipulation in the note precluded Menaugh from asserting that he was a surety; and that in accordance with the elementary principle that a party cannot contradict his own note or bond, one expressly agreeing to be bound as principal is estopped from asserting as against the payee, that he is a surety. In *Heath* v. *Derry Bank*, 44 N. H. 174, the note read "all as principals, promise to pay," etc. In discussing the effect of the words quoted, the court stated that a surety, though equally bound with the principal to pay the note according to its terms, has certain rights which he may insist on, and the creditor has certain duties to perform,

which rights on the one hand, and obligations on the other hand
are protected and enforced for the sole benefit of the surety, and
consequently he may waive those rights by an express or implied
stipulation so to do, or by any acts or declarations inconsistent
with its existence, on which others have acted.  ''Hence no one
who contracts expressly as principal, or assumes a position which
is at variance or inconsistent with the relation of suretyship, on
which another has acted, shall be allowed to receive the benefits
incident to that character.  He is estopped by his representa-
tions and acts, and by his express contract, to claim any such
rights or benefits; and to allow him now to claim and receive
the rights to which he might otherwise have been entitled as
surety would be not to enforce the contract which the parties
made, but a very different one, and would be allowing this plain-
tiff to commit a fraud upon the bank by holding it to a contract
which it did not make, and allowing him to enjoy rights and
privileges which he had expressly and in writing contracted to
waive and abandon. * * * * This plaintiff therein contracted
as principal with the defendant, and all the evidence offered
would be incompetent, because entirely immaterial; for if all
the facts stated were proved or found by a verdict of a jury, they
could not in any way alter or affect the construction or opera-
tion, the force or effect, of the written contract.''  One of the
things stated and which the plaintiff asked to have submitted to
a jury was, whether the fact that one of the other signers on the
note was sole principal, and the plaintiff Heath a surety only,
''and whether these facts were well known by said bank at the
time said bank took said note of said Baldwin?''

[6]    Estoppels by contract are of two kinds, (1) estoppel
to deny the truth of facts agreed upon and settled by the terms
of the contract, and (2) estoppel arising from the acts done
under or in performance of the contract.  ''If, in making a con-
tract, the parties agree upon or assume the existence of a par-
ticular fact as the basis of their negotiations, they are estopped
to deny the fact so long as the contract stands, in the absence
of fraud, accident, or mistake.''  21 C. J. 1110, 1111; *Headly* v.
*Hoopengarner*, 60 W. Va. 626, 55 S. E. 744.  In *Carpenter* v.
*Buller*, 8 M. & W. 209, Baron Parke says that in all the in-
stances given in Com. Dig. Estoppel, (A. 2) under the head of
''Estoppel by Matter of Writing,'' (except one which related to

a release), are cases of estoppel in actions on the instrument in which the admissions are contained. "By his contract in the instrument itself, a party is assuredly bound, and must fulfil it." And in 10 R. C. L. at p. 799, speaking of the application of the principles of estoppel to contracts, it is said that "when a party has executed a written contract he is estopped to deny its terms."

[7, 8]   On the foregoing authorities there should seem to be no doubt that the estoppel here invoked is an estoppel by contract, and we hold that in view of the terms of defendant's undertaking on the notes in suit, and of her general powers to contract with persons other than her husband,. and apart from her disabilities mentioned above, she is in law estopped from saying that she did not sign the notes in any other capacity than as surety for her husband's debts; and we further hold that the form of her undertaking goes to the force and effect of the contract in its construction and operation, and therefore any evidence showing her to have been in fact, as between the signers themselves, only a surety for her husband even with plaintiff's knowledge at the time she signed, is incompetent and wholly immaterial; and to permit such fact to be shown resulted in the court's giving the notes a construction inconsistent with the express terms of the undertaking, and an operation unwarranted in law.   (This is not enforcing the contracts made, but different ones which were not entered into by the parties.)

It is said that a similar question was raised in the case of *Wetmore & Morse Granite Co.* v. *Ryle et al., supra.*   But it is enough to say of that case in this respect that the wife did not sign the note there involve in terms "as principal," and no question of estoppel was invoked.   The positive authority of a decision is co-extensive only with the facts on which it is based.   *Freeholder* v. *Jersey City*, 85 N. J. Law, 185, 88 Atl. 1061.

Since the defendant is bound in law for the amount due on the notes in suit, irrespective of any undertaking as surety for her husband, the fact of such relation between the two in connection therewith is immaterial, affords her no protection, and consequently evidence thereof was inadmissible and wrongly received.

It follows from the foregoing holdings that the plaintiff was entitled to have its motion for a directed verdict granted, and the overruling of it was error.   It was also error to order

a verdict in favor of the defendant, also to render judgment in her favor thereon. In view of these holdings it is unnecessary to consider any further questions presented.

*The judgment in favor of defendant Helen Bickford is reversed, and judgment is rendered against her for the amount due on the notes in question, with costs.*

POWERS, J., dissenting. I agree that a married woman may be estopped by her representations, oral or written. But I cannot agree with the majority as to the character and attributes of the estoppel here involved or its effect upon the disposition of the case. When a married woman's capacity to contract is in question, the estoppel applicable, if any, is the ordinary equitable estoppel, and is effective only when her representations have been ignorantly relied upon to one's prejudice. This estoppel wholly differs from those involved in the cases cited by the majority, which are not based upon a representation at all, but wholly on a rule of commercial policy. Mrs. Bickford is not estopped unless the Bank relied upon her representation as to the character of her obligation in ignorance of its true character. An estoppel against her can only be set up to avert an injustice. No injustice can here result if the Bank knew that she signed only as surety for her husband—which the statute did not allow.

Thus it was held in *First National Bank* v. *Rutter*, 91 N. J. Law, 424, 104 Atl. 138, where a married woman signed a note reading on its face "Value received for my own use and benefit," that she was not estopped from asserting her disability, because the bank knew all the time that the above quoted words were false.

In *Crumbaugh* v. *Postell*, (Ky. App.) 49 S. W. 334, it was held that a married woman who signed a note for the debt of her husband adding to her signature the word "principal," was not estopped from asserting her statutory incapacity because Postell knew the facts and was not deceived. *Indianapolis Brewing Co.* v. *Behnke*, 41 Ind. App. 288, 81 N. E. 119, was a case like the one last referred to. A married woman signed a note with her husband adding the word "principal" to her signature. It was held that inasmuch as the plaintiff knew all the facts and so was not misled, there was no estoppel. See, also, *Nott* v. *Thompson*,

35 S. C. 461, 14 S. E. 940; Bigelow on Estoppel, (6th ed.) 621. The cases cited by the majority to the effect that Mrs. Bickford is estopped by the form of the notes presuppose her capacity. Notwithstanding the form of the instrument coverture, infancy, insanity, or any other incapacity may be asserted in defense, unless an equitable estoppel prevents. The question whether the plaintiff knew when it took this paper that Mrs. Bickford was, in fact, a mere surety for her husband thereon, has not been litigated. It is quite apparent from what is shown by the record that she could, in another trial, produce evidence tending to show such knowledge. The case should not be finally disposed of here, but should be remanded for a retrial that she may not be cut off from making that showing. *O'Boyle* v. *Parker-Young Co.,* 95 Vt. 58, 112 Atl. 385.

TAYLOR, J., concurs in this dissent.