A. A. FAIRBANKS *v.* WARNER W. STOWE.

Special Term at Brattleboro, November, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 7, 1910.

*Statute of Frauds—Conveyance of Growing Trees—Effect as a Severance—Subsequent Acts of Vendor—Evidence.*

A conveyance of growing trees, to be removed only within a specified time, works in law a severance thereof from the freehold, converts them into personal property, and vests the title thereto in the grantees, who can thereafter sell and convey them orally or otherwise as they could any other personal property.

Where the grantees named in a deed, duly witnessed, acknowledged, and recorded, and conveying standing trees that were to be removed only within a specified time, made a parol sale of the trees, they could not defeat the purchaser's title by assigning the original deed to a third person to whom the land had been conveyed.

A ruling based on a wrong ground will not be disturbed if it can be
sustained on any ground.

In trespass for cutting trees, evidence that defendant had acquired title
to the trees by a parol purchase is not admissible under the general
issue, as any matter of justification or excuse of a trespass must
be specially pleaded.

TRESPASS QUARE CLAUSUM for cutting trees. Plea, the
general issue. Trial by jury at the April Term, 1909, Windham
County, *Butler*, J., presiding. Verdict directed for the plain-
tiff for nominal damages, and judgment thereon.

On October 2, 1905, the defendant, then being the owner
in fee of the farm of which the *locus* is a part, by his writing of
that date, called in the case a contract or lease, duly signed,
sealed, witnessed by two witnesses, and acknowledged, in consid-
eration of five hundred dollars paid to him by Darling, Clark,
and Hubbard, sold and conveyed to them "all the growing timber
of every description" thereon, excepting and reserving what
was on a certain portion thereof described by bounds, said in-
strument expressly stating that the right and title of the grantees
thereunder were not in fee simple, but an estate for years, to
extend only for the space of five years from the granting thereof.
Said instrument was recorded in the land records of Halifax on
November 13, 1905.

On October 6, 1905, the defendant quitclaimed the farm to
Boyd, who on May 3, 1907, quitclaimed it to Marvin Fairbanks,
"excepting the timber right of Darling, Clark, and Hubbard";
and on May 6, 1907, Marvin Fairbanks conveyed the same by
warranty deed to the plaintiff, "excepting the lumber right of
Darling, Clark, and Hubbard." The alleged trespasses con-
sisted of the defendant's entering upon the land described in
said deeds, and cutting thereon certain of the trees conveyed
by him to Darling, Clark, and Hubbard as aforesaid.

The defendant claimed that he had orally bought the lumber
rights of Darling, Clark, and Hubbard, and was acting there-
under in cutting what he did, and claimed that his oral pur-
chase was subsequently, and before he did the cutting, to wit,
on June 11, 1908, reduced to writing and signed by Darling
and Clark, and it is of the tenor following: "In consideration
of sixty dollars paid to us by W. W. Stowe, we agree to sell

back the standing timber in the run, so called, and on the side hill back of the old barn. The same is part of the lot sold us by said Stowe in 1905, situated in the town of Halifax.'' This paper is dated June 11, 1908, and signed by Darling and Clark. It appeared that there was other lumber already cut on the lot, that belonged to Darling, Clark, and Hubbard, and no question was made but that they had a right to go thereon to take it away. The plaintiff owned the farm on August 1, 1908, the time of the alleged trespass, and was in exclusive possession thereof, save such rights as were acquired therein and being exercised by Darling, Clark, and Hubbard and the defendant.

The plaintiff offered in evidence a writing, dated June 30, 1908, purporting to be an assignment by Darling, Clark, and Hubbard to him of all their right, title, and interest under and by virtue of said contract or lease from the defendant to them, which said writing was under seal, had but one witness, was executed in Massachusetts, and acknowledged before a special commissioner. The defendant objected to the admission thereof for divers reasons, and among them, that as it had but one witness, it was not sufficient to convey an interest in land in this State; that it did not appear upon it that the person before whom it purported to be acknowledged was authorized to take the acknowledgment; and that it was not properly authenticated. Thereupon the plaintiff introduced testimony tending to show that by the law of Massachusetts one witness is sufficient to an instrument conveying an interest in real estate, and that the governor of that state can, with the consent of the council, appoint commissioners to acknowledge deeds, administer oaths, etc. Thereupon the instrument was admitted, to which the defendant excepted. The plaintiff testified that he bought the rights of Darling, Clark, and Hubbard about June 20, 1908, and soon after received said lease from them with said assignment pinned thereto. This was not disputed. The plaintiff also testified that at that time he had no knowledge of the defendant's claim. When said lease thus came into the plaintiff's hands it had this written on the back of it: ''Halifax, Vt., June 20, 1908, Town Clerk, please discharge this lease,'' signed by Darling, Clark, and Hubbard but not sealed.

When the plaintiff rested the defendant offered to show that the title to the trees in question was in Darling, Clark, and Hub-

bard at the time of the alleged trespass; that the defendant acquired title thereto from them, or license and permission to cut and remove them in manner aforesaid; that the title thereto was never in the plaintiff; that after the plaintiff knew that the defendant had bought them, he went to Darling, Clark, and Hubbard and acquired his claimed title for the purpose of defrauding the defendant, and procured said assignment by false and fraudulent representations, in that he wanted the assignment for the sole and only purpose of getting a thief, to wit, one White, off his place; that he was informed by Darling, Clark, and Hubbard that they had already sold the trees to the defendant; that whatever title the plaintiff took under said assignment he took subject to the defendant's right; and offered to put in evidence the writing that Darling and Clark gave him evidencing his purchase of them as aforesaid. But the defendant's offers were excluded, to which he excepted. A verdict was then directed for the plaintiff, the court holding that the defendant's license was revoked by Darling, Clark, and Hubbard's assignment attached to the lease, and the discharge on the back of the lease; to all which the defendant excepted.

*Herbert G. Barber* and *Frank E. Barber* for the defendant.

*Chase & Daley* for the plaintiff.

ROWELL, C. J. The sale and conveyance of the trees to Darling, Clark, and Hubbard by the defendant, evidenced by his deed to them of October 2, 1905, worked in law a severance thereof from the freehold, converted them into personal property, and vested the title thereto in the grantees as such property, for that was manifestly the intention of the parties. Therefore the grantees could sell and convey them orally or otherwise, the same as they could any other personal property, and the defendant could acquire title thereto as he offered to show he did, and that title would authorize him to go upon the land and cut and remove them within the time limited, for the plaintiff took his title subject thereto, as the lumber right of Darling, Clark, and Hubbard was excepted in his deed, and their lease was on record. Nor could they defeat the defendant's right

and title in this behalf by assigning the lease to the plaintiff, nor by discharging it, as they directed the town clerk to do. This being so, it is unnecessary to consider any of the objections to the admission of the assignment.

*Sterling* v. *Baldwin,* 42 Vt. 306, is full authority for this holding. That was trespass for cutting trees. One Adams sold and conveyed the land to the plaintiff by deed duly executed and recorded, reserving therein to himself all the hemlock timber standing on a certain part thereof, with the right to cut and remove the same at any time within two years. Afterwards Adams sold the trees to Quimby, and evidenced it by a writing neither sealed, witnessed, nor acknowledged. After that, Adams quitclaimed to the plaintiff by a deed duly signed, sealed, witnessed, and acknowledged, all the rights and timber reserved to him in his first deed to the plaintiff. The Court said that by that reservation the parties virtually treated the trees as personal property, in no way so partaking of the nature of realty as to require a deed as between them to transfer the title thereto from Adams to the plaintiff nor from Adams to any one else; that therefore the deed subsequently made by Adams to the plaintiff, purporting to cover and convey only the same property, could be of no greater efficacy than such a writing as Adams gave to Quimby would have been if it had been given to the plaintiff instead of said deed. The Court held that Quimby got good title to the trees by his purchase of Adams, evidenced by said writing, and that his title was in no way defeated by the deed of Adams to the plaintiff subsequently obtained. The Court expressly says that the case does not at all bring into consideration the rights of *bona-fide* purchasers who take title by deeds duly executed, acknowledged, and recorded, and who are not affected by the record or in some other equivalent way with the knowledge or effect of such a sale of growing trees standing upon the land covered by such deeds as was made by Adams to Quimby, because the plaintiff was party to the virtual severance of the trees by the operation of his first deed with its reservation, which made the trees susceptible of valid sale by Adams without deed; that therefore he could not be misled by the record, and if he would make himself certain whether he could get a good title to them by a subsequent purchase from Adams, it behooved him to keep track of the ownership by other means than the land records

of the town. But this case is stronger than that, for the defendant offered to show that before and at the time the plaintiff got his assignment from Darling, Clark, and Hubbard, he was told and knew that the defendant had already bought their right and interest.

It follows, therefore, that the court was wrong in excluding the defendant's offer on the ground it did. But the plaintiff says that though the ground was wrong the exclusion was right, because the defendant should have specially pleaded the things he offered to show, and could not show them under the general issue. This claim was not made below, but is properly made here as a ground for sustaining the ruling, for if there is any ground on which it can be sustained it will be; and there is, for the plaintiff is right in his claim, the rule being that when, as here, the act complained of is *prima facie* a trespass, and the allegations of fact in the declaration can not be denied, any matter of justification or excuse must, in general, be specially pleaded. 1 Chit. Pl. [*501]; *LeCaux* v. *Eden,* Dougl. 594, 611; *Milman* v. *Dolwell,* 2 Camp. 378; *Knapp* v. *Salsbury,* Ib. 500; *Rawson* v. *Morse,* 4 Pick. 127. And see *Hill* v. *Morey,* 26 Vt. 178; *Sawyer* v. *Newland,* 9 Vt. 383, 393.

*Judgment affirmed.*