### Fox v. Terre Haute National Bank.

[No. 10,637. Filed December 8, 1920. Rehearing denied March 11, 1921. Transfer denied November 17, 1922.]

1. BILLS AND NOTES.—*Promissory Note.—Surety Signing as Comaker.—Discharge.—Extension of Time of Payment.—Statutes.*—Under §119 of the Negotiable Instrument Law (Acts 1913 p. 120, §9089a *et seq.* Burns 1914), as to the discharge of instruments, §120, concerning the discharge of persons secondarily liable, and §192, defining persons primarily and secondarily liable, a person signing on the face of a note as a comaker, though in fact a surety to the knowledge of the holder, is not discharged by an extension of time of payment for a valuable consideration without his consent, notwithstanding §58 of the act, making a negotiable instrument subject to the same defenses as if it were not negotiable in the hands of any holder other than a holder in due course. p. 668.

2. BILLS AND NOTES.—*Negotiable Instrument Law.—"Defense."—Construction.*—Section 58 of the Negotiable Instrument Law. (Acts 1913 p. 120, §9089a *et seq.* Burns 1914), providing that a negotiable instrument shall be subject to the same defenses as if it were not negotiable in the hands of any holder other than a holder in due course, must be construed in harmony with the other sections, so as to give effect to the general purpose and intent of the act, and when so interpreted the word "defenses" must be construed as referring to defenses existing at the time of the execution of the instrument or arising out of the original transaction. p. 678.

3. BILLS AND NOTES.—*Promissory Note.—Payment.—Giving New Note.—Intent of Parties.*—The giving of a new note for the amount of an old note is *prima facie* evidence of payment, but it is not payment when not so intended by the parties. p. 678.

From Clay Circuit Court; *Thomas W. Hutchinson,* Judge.

Action by the Terre Haute National Bank against Frank P. Fox and another. From a judgment for plaintiff, the named defendant appeals. *Affirmed.*

*James W. Noel* and *Hubert Hickam,* for appellant.
*C. A. Royse* and *Rawley & Baumunk,* for appellee.

ENLOE, J.—This was a suit by appellee upon the following note:

"$500.00            Terre Haute, Ind., August 29, 1914.

Six months after date I promise to pay to the order of the Terre Haute National Bank, Terre Haute, Ind., five hundred dollars.

For value received, without any relief from valuation or appraisement laws. With interest at 6 per cent. per annum after maturity, until paid, and reasonable attorney's fees. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note.

"Richard A. Werneke.<br>"F. P. Fox."

"Due February 28, 1915."

The complaint was in one paragraph, to which the appellant answered in six paragraphs, as follows: First, general denial; second, that he executed said note as surety; third, payment; fourth, that Werneke paid said note by giving a new note; fifth and sixth, severally, release of appellant, by reason of time of payment having been extended by agreement between Werneke and said bank, without knowledge or consent of appellant as surety thereon.

The defendant Werneke made default. The appellee demurred to said fifth and sixth paragraphs of answer, which demurrer was sustained by the court, and appellant excepted. Replies in general denial to the second, third, and fourth paragraphs of answer closed the is-

sues, which were submitted to the court for trial, resulting in a finding and judgment in favor of appellee and against appellant.

Appellant then filed his motion for a new trial, which, being overruled, he prosecutes this appeal, and has assigned and presented as error the action of the court severally, in sustaining said demurrer to each of said paragraphs of answer, and in overruling his motion for a new trial.

The said first and second assignments of error present the same question, namely: Did either of said fifth and sixth paragraphs of answer state facts sufficient to constitute a defense to appellee's said cause of action? Or, to state the question another way, Where two or more parties execute their negotiable promissory note, all signing on the face thereof, and one or more of said makers is in fact a surety, and the holder of the note, with full knowledge of this fact, at the maturity of the note, extends the time of payment for a valuable consideration, and without the consent of the surety or sureties thereon, is such surety, or sureties, discharged from liability on the note?

Our legislature in 1913, adopted what is known as the Uniform Negotiable Instrument Act. Acts 1913 p. 120, §9089a *et seq.* Burns 1914. The title of the act is as follows:

"An act relating to negotiable instruments, being an act to establish a law uniform with the laws of other states on that subject."

"Sec. 119. A negotiable instrument is discharged: 1. By payment in due course by or on behalf of the principal debtor; 2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; 3. By the intentional cancellation thereof by the holder; 4. By any other act

which will discharge a simple contract for the payment of money; 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." §9089o4 Burns 1914, _supra._

"Sec. 120. A person secondarily liable on the instrument is discharged: 1. By any act which discharges the instrument; 2. By the intentional cancellation of his signature by the holder; 3. By the discharge of a prior party; 4. By a valid tender of payment made by a prior party; 5. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; 6. By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." §9089p4 Burns 1914, _supra._

"Sec. 192. The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." §9089j4 Burns 1914, _supra._

The question thus presented for our consideration, as affected by said act, is a new one in this state, but we are not without authorities from other states.

In the case of _Union Trust Co._ v. _McGinty_ (1912), 212 Mass. 205, 98 N. E. 679, Ann. Cas. 1913C 525, the court said: "The single question presented in this case is whether the accommodation maker of a promissory note is discharged, if the holder, knowing that the note was made for the accommodation of the payee and endorser, by agreement with the endorser upon a valuable consideration, without the maker's consent, extends the time of payment." In passing upon the question then before it, the court said: "Before the enactment of the nego-

tiable instrument act, * * * one who made a promissory note for the accommodation of another was as between the parties a surety. The holder, who had knowledge of the true relation of the parties, was bound to act toward such accommodation maker as toward a surety in order to preserve his rights against him. Under such circumstances an extension of time to the person ultimately liable, without the consent of the surety, that is the accommodation maker, released the latter. * * *

"It is a matter of common knowledge that the negotiable instrument act was drafted for the purpose of codifying the law upon the subject of negotiable instruments and making it uniform throughout the country through adoption by the legislatures of the several States and by the Congress of the United States. The design was to obliterate State lines as to the law governing instrumentalities so vital to the conduct of interstate commerce as promissory notes or bills of exchange, to remove the confusion or uncertainty which might arise from conflict of statutes or judicial decisions among the several States, and to make plain, certain and general, the controlling rules of law. * * *

"Approaching the act from this point of view, it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder full value according to the terms of the bill or note. Their obligation is primary and absolute. * * * The act makes no provision for the proof of another and different relation than that expressedly undertaken and defined by the tenor of the instrument signed. * * * In the interpretation of a statute widely adopted by the

States to the end of securing uniformity in a department of commercial law, we should be inclined to give great weight to harmonious decisions of courts of other States, even if we were less clear than we are in this instance as to the soundness of our own conclusion."

In the case of *Bradley Engineering, etc., Co.* v. *Heyburn* (1910), 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127, a note had been executed, signed by a certain named corporation and by Heyburn and Ward. Suit was brought upon this note. One of the makers, Heyburn, appealed, and on appeal urged that the court below had erred in sustaining a demurrer to his answer in which he had alleged that he was an accommodation maker; that he was bound only as a surety; that said facts were well known to the plaintiff; and that plaintiff had, without his knowledge or consent, extended the time of the payment of said note, by reason of which, as such surety, he was released. In passing upon the question thus presented the court, after quoting certain sections of the Negotiable Instrument Act, said: "When we consider that it was the object of the negotiable instrument act to make such instruments certain and to speak the true contract of the parties, thus saving the commercial world the hazard of trumped up defences or the peril of trying out collateral issues such as suretyship, etc., in case of suit, it would seem that we can not reject the other sections and give effect only to section 58. * * * Being primarily liable as an accommodation maker, appellant was not discharged by an extension of time to the principal debtor." Citing authorities.

In the case of *Citizens' Bank* v. *Bowdon* (1916), 98 Kans. 140, 157 Pac. 429, W. H. Bowdon and Emma L. Bowdon had signed a note payable to said Citizens' Bank. The note becoming due and remaining unpaid, suit was brought against both said makers. Emma L.

Bowdon answered that she signed said note as surety only, which fact said bank well knew; that without her consent the time of payment was extended by an agreement between said bank and W. H. Bowdon; that thereby she was discharged from all liability. A demurrer to this answer was sustained, and this ruling presented the question on appeal. In passing upon the question before it, the court said: "The uniform negotiable instruments act provides that one who by the terms of a note is absolutely required to pay it is 'primarily liable.' It mentions an extension of time to the principal as one of the methods by which one who is 'secondarily liable' may be released. * * * The inference is natural that a comaker of a note, although in fact a surety, cannot be discharged in this manner, and this is the view that has generally been taken of the meaning of the statute." (Citing authorities.)

In *Cowan* v. *Ramsey* (1914), 15 Ariz. 533, 140 Pac. 501, a note had been executed, signed by Frank Ramsey, Mrs. Frank Ramsey, and Peter Johnson. The defendant Johnson answered that he received no part of the money for which the note was given and that he only signed and executed the said note as surety and not as the principal maker thereof, all of which was then and at the time well known to the plaintiff; that the plaintiff, the holder of the note, without his knowledge or consent and after said note was due and payable, entered into a valid agreement with said Frank Ramsey and Lulu Ramsey to extend the time of the payment thereof. The cause was tried by the court, which found in favor of said Johnson on his said paragraph of answer and the plaintiff appealed.

In passing upon the question the court said: "The question is as to whether the matters set up by defendant constitute a defense. In other words, is the defense of extension of time of payment by the holder of a ne-

gotiable promissory note to the principal available to
the accommodation comaker, when the extension is
granted without his consent, under the negotiable in-
strument law?"

In passing upon the question thus presented the court,
after quoting sections 119 and 120 of Uniform Nego-
tiable Instrument Act, and citing authorities, said:
"These two sections, standing side by side, both deal-
ing with the subject of discharge of liabilities of par-
ties, the one mentioning, the other not mentioning, ex-
tension of time by the holder as a means of working
discharge of liability, cannot be treated as accidental or
without significance. It is strong proof of a legislative
purpose to change the pre-existing law of the common-
wealth."

The court, after citing numerous authorities to sus-
tain its position, held that the said answer failed to
state a defense and reversed the case.

In the case of *Wolstenholme* v. *Smith* (1908), 34 Utah,
300, 97 Pac. 329, George H. Smith and J. E. Darmer
had executed their promissory note to one Joseph P.
Megeath, who afterward assigned the note to James
Megeath. The note not being paid at maturity, suit
was brought thereon against the makers. Darmer, an-
swering the complaint, alleged that his codefendant,
Smith, was the principal debtor; that he, Darmer, re-
ceived no part of the consideration for which said note
was given; that he signed said note only as surety for
said Smith, which facts were known to both Joseph P.
and James Megeath when said note was executed; that
by agreement between said Smith and said James Me-
geath the time of payment thereof had been extended
without his knowledge or consent, and that by reason
of the extension of time and delay of payment he had
been prevented from protecting and securing himself.

There was a trial by the court, with a finding of facts, and the facts were found substantially as alleged in this answer, but the court rendered judgment against Darmer and he appealed. In passing upon the question thus presented, the Supreme Court said: "There is no doubt that under the decisions of this court prior to the enactment of Chapter 83 * * * relating to negotiable instruments, the facts alleged in the answer and found by the court constituted a defense, and discharged Darmer."

After quoting various sections of the Uniform Negotiable Instrument Law, the court concludes: "Under the new law the appellant's apparent engagement as a maker and principal debtor is his real and actual engagement. He signed the note as a maker. By the terms of the instrument, he was absolutely required to pay it. The statute in such case makes him an actual principal and renders him primarily liable, though he received, with the knowledge of the holder, no part of the consideration, and only signed the note for the purpose of lending his name to another. Having signed the note as an apparent maker and principal debtor, he cannot thereafter be heard to assert the contrary so as to affect his liability on the instrument."

In the case of *Cellers* v. *Meachem* (1907), 49 Ore. 186, 89 Pac. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997, a note had been signed by E. L. Meachem and Joseph Lyons with the word "surety," added to the name of the latter. The note not being paid, the payee therein named brought suit. Lyons answered, admitting the execution of the note but alleging that he signed said note as surety only, without consideration, and for the sole use and benefit of Meachem and of the plaintiffs; that the payee had full knowledge of the condition under which it was executed; that after the note had matured, the time of payment thereof had been extended by an

agreement between Meachem and payees without the knowledge or consent of Lyons; and that by reason thereof he is relieved from all liability.  Lyons had a verdict and judgment upon his said answer.  Upon appeal the court said: "Prior to May 17, 1899, a valid agreement entered into between a principal and the payee of a negotiable instrument, binding the latter, without the assent of the surety, whereby the time of its payment was extended, relieved the accommodation maker, whether his liability was primary or secondary, and the existence of such agreement could be shown by parol"—citing authorities.  "The word 'surety' appended to the name of a maker of a note, cannot alter his liability as to the owner thereof, and only shows that, as between the promisors, one is a principal and the other a guarantor."  Citing authorities.

After quoting several sections of the Negotiable Instrument Law, the court then says:   "It is indicated in the title of the act under consideration that its purpose is 'to establish a law uniform with the law of other states on that subject.'   Inasmuch as the enactments relating to negotiable instruments differed in various states, and as the decisions interpretating both the common-law and legislative provisions were far from being harmonious, it must be inferred, from the language constituting the title of the act that it was intended to provide a complete and comprehensive law on this subject; and since it defines an accommodation maker, making him primarily liable, and in one section designates how negotiable instruments may be discharged, but contains no provision whereby a person 'primarily liable' can be released except by payment, etc., and in the section following specifies the manner in which persons 'secondarily liable' may be relieved of responsibility on such instrument, it follows that the immunities indicated there were intended to exclude all exceptions not contained

therein, under the familiar maxim: *'Expressio unius est exclusio alterius.'* "

The case of *National Citizens' Bank, etc.,* v. *Toplitz* (1903), 81 App. Div. 593, 81 N. Y. Supp. 422, involved an accommodation note. Emma I. Toplitz had executed and delivered to L. Toplitz Son and Company, her note for $4,000 as an accommodation maker thereof. The payee negotiated said note. It not being paid, suit was brought against the accommodation maker. She answered that the note was delivered as an accommodation note, of which fact the bank had knowledge; that after its maturity, without her knowledge or consent, the time of payment had been extended for a certain fixed time, whereby she was released, etc. The trial judge held that the matters thus pleaded did not constitute a defense; that the defendant was primarily liable as the maker of the note, notwithstanding the extension of time of payment. In passing upon the question presented to it the supreme court said: "In this ruling the trial court was right. Concededly this was an accommodation note; it was given with the intention that the endorser raise money on it, on the liability of the maker, and the maker is liable primarily notwithstanding the knowledge of the holder that she was an accommodation maker only. * * * She lost nothing by the extension of time to the indorser, for she had no right of action *on the note* itself as against the indorsers. She could not sue them on the note and she lost nothing of her claim against them, for by paying the note at any time she could have maintained her action to recover through the indorsers notwithstanding the extension of time of payment of the note by the bank."

In the case of *First State Bank* v. *Williams* (1915), 164 Ky. 143, 175 S. W. 10, a note had been made by Brasher and Williams, payable to the order of the First

State Bank of Nortonville. The bank, becoming insolvent, was placed in the hands of one Fowler as liquidating agent. Suit being brought on this note, Williams defended on the ground that he was a mere surety, and that the time of payment of said note had been extended without his consent; that the fact of his suretyship was known to all the parties therein. A trial by the court resulted in a finding that there had been a valid agreement for the extension of time of payment of the note and Williams was released from liability thereon. On appeal by the bank, in passing upon the question the court said: "The Act thus specifies how the instrument, and consequently the parties primarily liable, may be discharged; and the several ways in which persons secondarily liable may be discharged. When speaking of persons primarily liable it contains no provisions releasing them by the holders extending the time for payment or postponing his right to enforce the instrument. When speaking of persons secondarily liable, it does provide that they may be released by such an agreement. The question of release of a party by the extension of the time of payment being thus present in the legislative mind, it is evident that if it was intended that a person primarily liable should be so released it would have so provided in the Act."

In concluding the opinion the court said: "We, therefore, conclude that an accommodation maker, or surety, though known to be such by the payee, is not released by an agreement between the payee and the principal obligor extending the time of payment or postponing the payee's right to enforce the instrument, though made without the assent of the accommodation maker."

The law as thus declared is the law also as declared in each and all of the states, except Iowa, which have adopted the Uniform Negotiable Instrument Act, where the question now at bar has been passed upon.

The appellant seems to rely upon §58 of the Negotiable Instrument Act, Acts 1913 p. 120, *supra*, as authorizing the defense attempted to be made in this case. That section, so far as the same is applicable to the question now under consideration, reads: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were not negotiable. * * *"

This section must be construed in harmony with other sections, and so as to give effect to the general purpose and intent of the act. This can be done by reading into said section, after the word "defenses," "existing at the time of its execution or arising out of the original transaction." This would allow such defenses as "no consideration" to be made the same as formerly, but would exclude such defenses as the one sought to be interposed in this case, as being one arising subsequent to the execution of the said instrument and out of a collateral matter. This construction will make the entire act harmonious, and give full effect to its various provisions.

In harmony with the foregoing authorities, and many more could be cited, we hold that the trial court did not err in sustaining said demurrer to said paragraphs of answer.

Appellant next insists that the record in this case conclusively shows payment of the note in suit by the giving of subsequent notes by said Werneke to said bank. To this we cannot assent. The giving of said new note was *prima facie* a payment, but there is evidence that it was not taken and received, and not so intended by the parties to the transaction. The trial court found against appellant, and we find no good reason to disturb such finding. We find no error in the record and the judgment is therefore affirmed.