NATIONAL BANK OF NEWBURY *v.* CARRIE M. HALE.

October Term, 1924.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 6, 1925.

*Husband and Wife—Wife as Surety for Husband—Admissibility of Parol Evidence to Show Wife Signed Contract as Surety for Husband.*

1.   Under G. L. 3523, as amended by Acts, 1919, No. 90, regardless of
     form of undertaking, when liability of no one except wife or
     husband and wife is involved, wife may always show that her
     relation to such transaction is that of surety for her husband,
     not for purpose of varying terms of a written contract, but to
     show that as to her there is no contract.

ACTION OF CONTRACT upon certain promissory notes.   Plea, general denial and special defense that plaintiff, a married woman, signed such notes as surety for her husband, and not otherwise.   Trial by court in vacation after December Term, 1923, Orange County, *Chase,* J.   Judgment for defendant.   The plaintiff excepted.   The opinion states the case.   *Affirmed.*

*Searles & Graves* for the plaintiff.

*Shields & Conant* for the defendant.

SLACK, J.   The action is contract to recover the balance due on three promissory notes signed by the defendant.   The de-
31

fendant pleaded, and her sole defense was, that she signed the notes in question as surety for her husband and in no other capacity. No replication was filed but the case has been treated thus far as though a reply by way of estoppel had been formally pleaded, and we so treat it. On the facts found by the court below defendant had judgment and the case is here on plaintiff's exceptions.

While the notes in suit differ somewhat in form, they are treated by the plaintiff as standing alike, as though payable to its order.

It appears from the unchallenged findings that the defendant is, and during the time here material was, the wife of James B. Hale; that the notes sued on are renewal notes; that each is signed on its face by the defendant, and on its back by James B. Hale & Son and James B. Hale; that both names on the back of the notes were placed there by James B. Hale; that the name "James B. Hale & Son" was the firm name under which James B. Hale carried on a mercantile business in which he alone was interested at the time the notes in question, and the originals, were given; that when the original note, in each instance, was given to the plaintiff credit therefor for the full amount was given to James B. Hale who had a checking account with the plaintiff.

Other findings which are challenged, are these: "The defendant, Mrs. Hale, had no dealings with the bank herself respecting these notes or any notes, nor did she have any of the proceeds thereof for her own use. In each instance she merely signed the notes at the request of her husband, who made them out and took them to her to be signed- and who did the business with the bank and who used the proceeds as he saw fit. The plaintiff knew that she was the wife of James B. Hale, and knew that James B. Hale was given the credit in each instance for the proceeds of the notes in his personal checking account. * * * The proceeds of these notes were used by Mr. Hale for his own benefit and Mrs. Hale, the defendant, simply signed them at his request because he asked her to. * * * That the original notes and all renewals thereof, including the notes in suit, were signed by the defendant as surety for her husband, and not otherwise. * * * That the plaintiff bank had full knowledge, at the time it accepted each of the various notes signed by the defendant, of the capacity in which she signed them."

The latter findings were severally excepted to on the ground that they were immaterial, and that the defendant was estopped, by the form of the notes, from claiming that she was only a surety for her husband. The plaintiff also excepted to the admission of the evidence upon which some of these findings are based, and to the judgment; but since such exceptions present in different ways the same question raised by the last exception to the findings, which is really the only question for review, they do not require separate consideration.

[1] The plaintiff contends that the defendant was estopped by reason of the form of the notes from showing her true relation thereto both under the holding in *Barton Savings Bank & Trust Co.* v. *Bickford,* 97 Vt. 166, 122 Atl. 582, and by the provisions of the Negotiable Instruments Act. Act No. 99, Laws 1912 (G. L. Ch. 140). This claim is untenable. Prior to 1884, a note executed by a married woman was void. *Brown* v. *Sumner's Estate,* 31 Vt. 671; *Southworth* v. *Kimball,* 58 Vt. 337, 2 Atl. 120; *First National Bank of Montpelier* v. *Bertoli,* 87 Vt. 297, 89 Atl. 359. By No. 140 of the Acts of that year, married women were given the right, subject to certain express limitations set forth in the Act, to contract with persons other than their husbands as if unmarried. *Barrows* v. *Dugan's Estate,* 88 Vt. 441, 92 Atl. 927; *French* v. *Slack,* 89 Vt. 514, 96 Atl. 6. One of the express limitations to their enlarged powers was that "nothing herein contained shall authorize a married woman to become surety for her husband's debts, except by way of mortgage duly executed." This limitation was changed to the form of a positive prohibition as early as 1894 (see V. S. 2646), and has so remained to the present time. G. L. 3523 as amended by No. 90, Acts 1919. And contracts of that nature are void. *Bradley Fertilizer Co.* v. *Caswell,* 65 Vt. 231, 26 Atl. 956; *First National Bank of Montpelier* v. *Bertoli, supra; Wetmore & Morse Granite Co.* v. *Ryle et al.,* 93 Vt. 245, 107 Atl. 109. And regardless of the form of the undertaking, when the liability of no one except the wife or the husband and wife is involved, the wife may always show that her relation to such transaction is that of surety for her husband, not for the purpose of varying the terms of a written contract, but to show that as to her there is *no* contract. *Bradley Fertilizer Co.* v. *Caswell, supra.*

Nor is the holding in the Barton Bank case to the contrary. The notes there sued on were signed on the face by one

Harding, Mrs. Bickford, and her husband, in the order named. Each signer by the terms of the notes in unmistakable language, assumed to, and did, contract jointly and severally "as principal," to pay such notes. According to the terms of the notes, each signer became primarily liable therefor within the meaning. of section 192 of the Negotiable Instruments Act (G. L. 2868); and the engagement of each as evidenced by the notes was that he would pay them according to their tenor. Section 60, Neg. Inst. Act (G. L. 2929). The situation thus presented was this: Harding and Bickford were each liable on the notes for their full amount. As to the latter, Mrs. Bickford, for the reasons already pointed out, would have been entitled to show her true relation to the transaction, that is, that she signed merely as surety for him, had he and she alone signed the notes. See cases above cited. But as to Harding, the other signer, the situation was different; under the statute (G. L. 3521), she was competent to contract with or for him in any capacity she chose in the same manner as though a *feme sole;* or, in other words, in respect to her contracts with or for him she was *sui juris* the same as any other person. And their rights and liability with and to the bank, and each other, were controlled by the Negotiable Instruments Act, were defined thereby, and could not be varied by parol evidence. *Grapes* v. *Willoughby,* 93 Vt. 458, 108 Atl. 421.

Obviously, the effect of permitting her to show that she signed the notes as surety for her husband would necessarily have been to change or vary the terms of the written contracts which she had entered into with Harding and which she was competent to make. This it was held she could not do, even though the bank had knowledge that she signed in a capacity other than that assumed by her in the notes. See cases there cited. See, also, *Fox* v. *Terre Haute National Bank,* 78 Ind. App. 666, 129 N. E. 33, and cases there collected, as to the effect under the Negotiable Instruments Act of a payee's knowledge of the capacity in which the maker signs. The ground for permitting a wife to make such showing as between her and her husband, namely, that there was *no* contract because of her incapacity, did not exist as between Mrs. Bickford and Harding with whom she was competent to contract in the manner she did. In view of her capacity to contract with Harding in the way and manner that she did, and the express language of the contracts, it was held that she was estopped from making the defense re-

lied upon. What is there said to the effect that the right of a married woman to invoke evidence for the purpose of showing incapacity when material "cannot be broader than her incapacity" means precisely what is herein indicated.

The cases there and here cited to show that a wife is not liable when contracting as surety for her husband, except *Wetmore & Morse Granite Co.* v. *Ryle et al., supra,* in which the question presented in the Barton Bank case was not raised, all involve contracts executed by the wife alone or by the wife and her husband, and in no instance was a third person, with whom the wife was competent to act, a party to the contract. Manifestly, the controlling circumstances in the Barton Bank case were such that that case is not an authority for the plaintiff in this case; on the contrary, so far as it is applicable to the instant case, it is an authority for the defendant.

The plaintiff calls attention to various provisions of the Negotiable Instruments Act relating to the rights and liabilities of the parties to negotiable instruments, but, since for the reasons stated in the Barton Bank case they do not affect the question under consideration, we do not take time or space to notice them. It is said in that case, referring to the effect of the Negotiable Instruments Act upon the rights and liabilities of married women under the statute: "That statute has nothing to do with the policy of the State as to the contractual rights, privileges, and liabilities of married women. It neither directly nor indirectly makes any reference to them nor to the provisions of the enabling statute. The Negotiable Instruments Act presupposes the paper to be such as the parties are in law capacitated to make and the courts to enforce. Its general terms cannot be said to repeal, modify, or enlarge the positive provisions of the statute giving married women the right to contract, with corresponding liability—subjects other than the negotiability of valid paper. The rules of construction do not permit it. *Raleigh County Bank* v. *Poteet,* 74 W. Va. 511, 82 S. E. 332, L. R. A. 1915B, 928, Ann. Cas. 1917D, 359; *Peoples Nat. Bank* v. *Schepflin,* 37 N. J. Law, 29, 62 Atl. 333. The two statutes must therefore stand together, and each is to be given its true significance when applicable to the determination of this case."

It could serve no good purpose to discuss other cases cited in the briefs of the respective parties, since enough has been said to show that the defendant, in the circumstances, was not

estopped from making the defense interposed. It follows that the findings excepted to were material, and with the other findings herein stated, fully sustain the judgment of the lower court.

*Judgment affirmed.*