WEST RUTLAND TRUST CO. *v.* ARTHUR A. HOUSTON ET AL.

Special Term at Rutland, November, 1931.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 13, 1932.

*Novak, Bloomer & Spero* for the defendants.

*Stickney, Sargent & Chase* for the plaintiff.

GRAHAM, J. The action is brought by the receiver of the plaintiff bank to recover of the defendants, as makers, the balance due upon a promissory note. The execution and delivery of the note to the plaintiff, as payee, and the sum due thereon, are conceded. The special defenses pleaded by the defendants are:. (1) Failure of consideration, and (2) discharge by release or relinquishment of securities by the plaintiff. The trial was by jury, and, at the close of the evidence, a verdict was directed for the plaintiff. The defendants excepted to the direction of a verdict and to the judgment thereon. The case is here on defendants' exceptions.

The evidence weighed in the light most favorable to the defendants tended to show that on January 2, 1929, F. L. Jones was treasurer of the plaintiff bank, and the defendant Buck was an employee of the Buck Lumber Co., a partnership consisting of A. E. Buck and R. W. Buck. As a result of a talk then had between Jones and defendant Buck, a promissory note, dated January 2, 1929, payable to the order of the plaintiff two months after date, signed by defendant Buck, as maker, and indorsed by defendant Houston, was delivered to the plaintiff as collateral security for the indebtedness of the Buck Lumber Co. to it. The note in suit is a renewal of the note dated January 2; it is dated March 2, 1929, made payable to the order of the plaintiff thirty days after date, and signed by both defendants, as makers.

The defendant Buck testified that, before the note in suit was signed; he had a talk with Jones in which Jones told him that the bank examiner had not been to the bank, so he had been unable to use the former note, and he wanted a new note for the same purpose; that he expected the bank examiner there very soon, and the Buck Lumber Co., had a larger indebtedness than he thought the bank examiner would like; that he was afraid not to have some extra collateral there to show when the examiner came through, and it was to be used for that purpose only; that this note was to be held by the bank as collateral for the Buck Lumber Co.; that Jones requested Buck to get Houston to sign another note with him to be held until the examiner had

examined the books and then it would be returned to either Houston or himself. Defendant Houston testified that he had a talk with Buck about signing the note in suit, in which Buck told him the purpose of the note, and after that talk he signed it.

The defendants introduced in evidence a note, marked "Exhibit C," signed by Buck Lumber Co. as maker, and by A. E. Buck and R. W. Buck, as indorsers, dated March 2, 1929, and for the same principal amount as the note in suit, and made payable to the order of the plaintiff one month after date. This note was received in support of the claim of the defendants that the note here sued upon was held by the plaintiff as collateral security for Exhibit C. A payment of one thousand dollars was made by or through A. E. Buck, and was credited upon both the Buck Lumber Co. note, Exhibit C and the note in question.

The questions presented by exceptions I to XI, inclusive, overlap, and are many times duplicated, but we interpret the record as presenting two questions under this group of exceptions, (1) whether it was error to exclude evidence of a prior or contemporaneous oral agreement, in effect, that neither of the defendants would have to pay the note; and (2) whether it was error to exclude defendants' offers, in effect, that the plaintiff's treasurer told Buck that he would have to get Mr. Houston to sign another note in place of the first one, as he expected the bank examiner very soon, and that this note would be put in as collateral only to the indebtedness of the Buck Lumber Co.; that the Buck Lumber Co. had a big indebtedness and he was afraid of what the bank examiner might say; that the note would not be put through the offering book, but would be returned to one of the defendants after the bank examiner had made his examination of the bank; that upon that understanding the defendants signed the note. We will consider these questions in the order stated. The evidence offered under 1 was an attempt to vary and contradict the terms of the note by oral testimony. The familiar rule that a negotiable instrument which expresses on its face an absolute promise to pay cannot be cut down into a conditional promise, or enlarged, varied, or contradicted by evidence of a prior or contemporaneous parol agreement, has been stated and applied in two recent cases of this Court. *Citizens' Sav. Bk. & Tr. Co.* v. *Paradis & Sons,*

102 Vt. 114, 117, 146 Atl. 3; *Alexander* v. *Chevalier*, 98 Vt. 230, 234, 126 Atl. 498. The fallacy of the defendants' contention is that they treat the plaintiff as the accommodated party. But this is not so. The Buck Lumber Co. is the accommodated party even if the request for the note came from the plaintiff's treasurer. G. L. 2899; *Neal* v. *Wilson*, 213 Mass. 336, 100 N. E. 544. The exclusion was correct.

The offers under 2 were a repetition of what had already appeared in evidence by the testimony of the same witness, and testimony to the same effect was repeated by him later in the trial. It is proper for the court to prevent a witness from repeating his testimony to avoid "prolixity and undue emphasis." *Goodwin* v. *Holmes*, 87 Vt. 477, 478, 89 Atl. 742. The exclusion of legitimate evidence does not constitute reversible error, if it is subsequently admitted. *State* v. *Lapan*, 101 Vt. 124, 132, 141 Atl. 686. But this evidence was not legitimate; it is not available to the defendants as a defense to an action on the note.

To avoid any misunderstanding, it is necessary to state that by so holding we do not overlook the provisions of section 16 of the Negotiable Instruments Act (G. L. 2886), which provide, among other things, that "* * * delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument." But that provision of the Act presupposes a legal condition or purpose, which is not the case here.

Transactions with banks are affected with an unusual public interest. It is of public importance that all dealings with banks be conducted with integrity and honesty. That the public interests may be protected, they are subjected to oversight and inspection by the commissioner of banking and insurance. If, as the defendants contend, the note was given to the plaintiff merely as a semblance of collateral security for the indebtedness of the Buck Lumber Co., the result of such undertaking was to effect a scheme to deceive the bank examiner. If so, it was an illegal transaction, and it is against public policy to permit the defendants to rely upon such an illegality as a defense.

In such circumstances, the defendants are bound as the face of the note discloses. *New England Fire Ins. Co.* v. *Haynes*, 71 Vt. 306, 310, 45 Atl. 221, 76 A. S. R. 771; *Town of*

*Grand Isle* v. *Kinney,* 70 Vt. 381, 385, 41 Atl. 130; *State Bank* v. *Forsyth,* 41 Mont. 249, 108 Pac. 914, 28 L. R. A. (N. S.) 501; *Warren National Bank* v. *Jamieson,* 301 Pa. 45, 151 Atl. 672; *Skagit State Bank* v. *Moody,* 86 Wash. 286, 150 Pac. 425, L. R. A. 1916A, 1215; *Schwenker* v. *Teasdale* (Wis.), 239 N. W. 424. The application of this rule is especially apposite when as here, the rights of third parties have intervened by the sub-sequent insolvency of the bank. *Schwenker* v. *Teasdale, supra.* This decision of the Wisconsin court is the latest expression on the question, which has come to our attention.

██ ██ Exception XII appears to be a group or bundle of exceptions presented under a single point. The brief contains the general statement that the defendants offered to show the type of security which the bank held against the principal debtor and the manner and method by which it was released, the value of it as affecting the defendants' discharge, and the impairment of their subrogation rights. A reference is then made to the transcript pages 71, 74, 75, 76, 77, 90, 131, 179, 180, and 183. The reference is apparently for our convenience in searching for the purport of the claimed offers and the point of the several exceptions. This is not such briefing as brings any question before us for review. *Barclay* v. *Wetmore & Morse Granite Co.,* 94 Vt. 227, 234, 110 Atl. 1; *McAllister* v. *Benjamin,* 96 Vt. 475, 494, 495, 121 Atl. 263. However, we have read these several pages of the transcript, and find that the offers were not of the same character, and they called for and received diverse rulings. We do not search the record for grounds to reverse a case. *Sormani* v. *Christianson,* 100 Vt. 185, 187, 135 Atl. 769. Error must be made to appear. *Higgins* v. *Metzger,* 101 Vt. 285, 298, 143 Atl. 394. The defendants have failed to present in their brief a clear statement of the points to be considered under these various exceptions; so no error is made to appear.

What has been said concerning exception XII applies also to exception XIII. Just how the claimed declarations of Jones made subsequent to the giving of the note would be binding upon the bank, or operate as a discharge of the defendants, is not pointed out, nor is it apparent.

██ It remains to consider the defendants' exception to the direction of a verdict for the plaintiff. As we have seen, the note was given to the plaintiff bank as collateral security for a

██

pre-existing indebtedness of the Buck Lumber Co. The plaintiff, as payee, knew that the defendants were accommodation makers. The defendants contend that their obligation was that of sureties only. In support of their contention the defendants cite some of our early cases which were decided under the law merchant, but they have overlooked the provisions of the Uniform Act and the cases since its enactment. Section 25 (G. L. 2895) provides: "Value. is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time." Section 27 (G. L. 2897) provides: "Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

It is now generally held that, under the provisions of these two sections of the statute, one who takes a negotiable note as collateral to secure a pre-existing debt takes for value, even though no independent consideration is given. *American Nat. Bank* v. *Kerley,* 109 Or. 155, 220 Pac. 116, 32 A. L. R. 262; *Lowell* v. *Bickford,* 201 Mass. 543, 88 N. E. 1; *Neal* v. *Wilson, supra; Exchange National Bank* v. *Coe,* 94 Ark. 387, 127 S. W. 453, 21 Ann. Cas. 934 and note, 31 L. R. A. (N. S.) 287.

On the evidence, the plaintiff was a "holder for value" of the note with knowledge that the defendants were accommodation parties. What, then, is the relation of the parties, and what is the liability of the defendants on the note?

Section 29 (G. L. 2899) provides that: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

This provision of the Act was considered and construed by this Court in *Clifford* v. *West Hartford Creamery Co.,* 103 Vt. 229, 153 Atl. 205. In that case we held that the Negotiable Instruments Act changed the relation that had existed previously between an accommodation maker and a holder for value who knew him to be such; that under this Act an accommodation maker is liable to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be an

accommodation party; that an accommodation maker is primarily and absolutely liable on the instrument to a holder for value; that the previous rules of law to the effect that, if the holder knew a party had signed for accommodation only he must be treated as a surety, have been abolished; that an accommodation party can now claim no benefit as such as against a holder for value, but he is liable according to the facts of his undertaking the same as if he were himself financially interested in the transaction; and that an accommodation maker is · discharged from liability upon the instrument only in the five ways specified in section 119 (G. L. 2988).

Our construction of the pertinent provisions of the act in the Clifford Case is in accord with the great weight of authority. See note 48 A. L. R. 715, and note 65 A. L. R. 1425, where the cases are collected and discussed.

It follows that the liability of the defendants on the note is primary and absolute, and there was no error in the direction of a verdict against them.

*Judgment affirmed.*