HENRY A. MATOT *v.* HENRY A. SPALLHOLZ ET AL.

February Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 4, 1932.

*Novak, Bloomer & Spero* for the defendant Owen W. Mc-Shane.

*Philip M. M. Phelps* for the plaintiff.

THOMPSON, J. The plaintiff seeks to recover on two promissory notes dated April 23, 1930, payable to his order, signed by the Consolidated Slate Corporation of Vermont as maker, and indorsed in blank by the defendants before delivery. One note, Plaintiff's Exhibit 1, is for $2,000, payable two months after date, and the other, Plaintiff's Exhibit 2, is for $4,600, payable six months after date. They are hereafter referred to as the Matot notes. The defendants, who, with one exception, were directors of the First National Bank in Poultney, hereafter called the Bank, waived demand, notice of nonpayment, and

protest of the notes. They filed affidavits of defense and special answers. Trial was by court, and a finding of facts was filed. Judgment was for the plaintiff, and the defendants excepted. Owen W. McShane, hereafter called the defendant, is the only defendant who brings this case here for review.

It appears from the findings that the Consolidated Slate Corporation of Vermont, hereafter called the Slate Company, was engaged in quarrying slate in Poultney. The plaintiff was its president. On September 17, 1929, the Wm. Griffith Slate Company executed and delivered to him its demand note for $4,600, Defendant's Exhibit B, payable to his order. He indorsed it and discounted it at the Bank. The money which he received was to reimburse him for a like amount which he had advanced to the Wm. Griffith Slate Company. This note had been assumed by the Slate Company.

On April 5, 1930, the plaintiff executed and delivered to the Bank his promissory note for $2,000, Defendant's Exhibit A, payable to the order of the Bank ten days after date. This note was indorsed in blank before delivery by the defendant and five other directors of the Bank. The money which the plaintiff received on this note was delivered to the Slate Company and used by it for payroll purposes. The plaintiff received no personal benefit from it. Neither of these notes had been paid when this action was brought. They are hereafter referred to as the Bank notes.

The court found that about April 1, 1930, several of the obligations of the Slate Company in the Bank were past due, and its checking account had been overdrawn a large part of the time for several months. The bank examiner told the directors of the Bank that something must be done to get rid of the paper of the Slate Company which it held, and that the Bank could not discount any more of its paper. The plaintiff was informed of these things by Henry Spallholz, a defendant, who was president of the Bank, and also a stockholder and the treasurer of the Slate Company.

In early April, Spallholz told the plaintiff that he had negotiated with a finance company to discount some of the paper of the Slate Company, but it would not discount the same unless the president of the Company would personally indorse it. The plaintiff refused to indorse the paper and become personally

liable thereon. Spallholz insisted that he either indorse the paper or resign as president so that another person could be elected president who would indorse the paper and make the financing possible. The plaintiff was willing to resign if he received protection for his liability on the Bank notes.

Sometime before April 23, 1930, it was arranged between the plaintiff and Spallholz that the former should resign as president and deliver his Slate Company stock to the latter, who would complete the financing of the Slate Company and pay the Bank notes within ten days. It was agreed that notes for $2,000 and $4,600 respectively, signed by the Slate Company and indorsed by the directors of the Bank, should be given to the plaintiff to protect him against liability on the Bank notes for the same amounts.

On April 24, Spallholz offered the Matot notes to the plaintiff. The latter refused to accept them because they were indorsed by only three of the directors of the Bank. Spallholz said he would get the other names in accordance with their agreement, and went out and in a short time returned with the indorsements of two other directors. The plaintiff said again that all the names had not been procured as agreed, and Spallholz went out and returned soon with the indorsement of another director. The plaintiff refused again to accept the notes, and Spallholz went out and returned with the indorsement of the defendant on the notes. The plaintiff then accepted the notes from Spallholz under the agreement that Defendant's Exhibit A was to be paid before Plaintiff's Exhibit 1 became due, and Defendant's Exhibit B was to be paid before Plaintiff's Exhibit 2 became due.

The plaintiff had no conversation with the defendant about his indorsing the Matot notes. After the plaintiff accepted the notes, and on the same day, the Slate Company held a meeting, and the plaintiff resigned as president and delivered his stock in the Company to Mr. Spallholz according to their agreement and the latter was elected president. A few weeks later the Slate Company went into the hands of a receiver.

The court also made the following finding: "Plaintiff's one was given to protect Matot for being liable to the bank on defendant's A and plaintiff's two was given to protect him for being liable on defendant's B. When defendant's A should be

paid as agreed Matot was to surrender plaintiff's one and when defendant's B should be paid as agreed Matot was to surrender plaintiff's two. In the event that either or both defendant's A and B should not be paid as agreed, then the notes given to protect Matot on same might legally be enforced and the money collected therefrom used by Matot to take up defendant's A and B.''

The defendant excepted to ''each several statement or finding'' in paragraphs 5, 6, 7, 8, 11, 12, 14, 19, and to the sentence, ''The money which Mr. Matot received on this note was turned into the Slate Company and used for payroll purposes and he received no personal benefit from same,'' in paragraph 9, of the findings ''on the grounds that each of said findings severally is against the evidence, against the weight of the evidence, is unsupported by the evidence, and is contrary to the evidence, and that on all the evidence in the case said findings are not substantiated.''

The defendant, in his brief, calls attention to the fact that there are several defendants, that their defenses were somewhat different, and that on various occasions when evidence was received it was restricted to one defendant or another, but usually to Henry Spallholz, ''all as appears from the transcript.'' ''Consequently,'' he says, ''many of the findings, to which the defendant McShane took an exception, may be and probably are established by the transcript, but the evidence was offered and restricted as to some certain defendant, primarily defendant Spallholz, so that the defendant McShane's claim is that there was no evidence of any such facts with respect to him as a party defendant.'' This particular ground of exception was not raised below, and therefore it is not available in this Court. None of the grounds of exception raised below have been briefed, and for that reason we do not consider them.

The defendant has briefed his exceptions to the failure of the court to comply with certain of his requests for findings. Some of these requests are: No. 1. ''Plaintiff's Exhibit 1 was given as security to Defendant's A, to protect the plaintiff in the payment of Defendant's A.'' No. 3. ''Plaintiff was to hold Plaintiff's 1 until he had paid Defendant's A.'' No. 4. ''Defendant McShane signed Plaintiff's 1 as an accommodation indorser.'' No. 5. ''Defendant McShane received no considera-

tion for his signing or indorsing of Plaintiff's 1.'' No. 9. ''In the signing of Plaintiff's 1, the defendant McShane loaned his credit to the plaintiff.'' We consider these exceptions in their inverse order.

There was no error in the failure of the court to comply with these requests. The substance of request 9 is that the defendant indorsed the Matot note for $2,000 for the accommodation of the plaintiff. It appears from the evidence and the findings that the defendant indorsed this note for the accommodation of the Slate Company. It was to this Company, the maker of the note, that he loaned his credit. *West Rutland Trust Co.* v. *Houston,* 104 Vt. 204, 158 Atl. 69; *Neal* v. *Wilson,* 213 Mass. 336, 100 N. E. 544. This case is not like *Stoddard Brothers* v. *Howard,* 101 Vt. 1, 139 Atl. 776, which is relied upon by the defendant. In that case the defendant claimed that he signed the note after it had been signed by another maker and had come into plaintiff's possession, at the request of one of the plaintiffs as a mere accommodation to enable them to secure money thereon, and upon assurances that the plaintiff would save him harmless by reason thereof. The plaintiff in the instant case never had any conversation with the defendant about his signing the note.

While it appears from the record that the defendant received no consideration for indorsing the note, and that he was an accommodation indorser, in that he loaned his name to the Slate Company without receiving value therefor, it was not error for the court to fail to find these facts in accordance with requests 4 and 5. The relation of the defendant to the note is that of an irregular indorser and an accommodation party. The plaintiff is the payee and a holder for value. Under the provisions of G. L. 2933, the defendant is liable as an irregular indorser to the plaintiff as payee. Under the provisions of G. L. 2899, the defendant as an accommodation party is liable to the plaintiff as a holder for value, although the latter knew when he accepted the note that the defendant was only an accommodation party. *Howard Nat. Bank* v. *Wilson,* 96 Vt. 438, 120 Atl. 889; *Alexander* v. *Chevalier,* 98 Vt. 230, 234, 126 Atl. 498; *Clifford* v. *West Hartford Creamery Co.,* 103 Vt. 229, 246, 153 Atl. 205; *West Rutland Trust Co.* v. *Houston, supra.* Under these

circumstances, the facts embodied in the requests are immaterial in this case.

The court properly refused to comply with requests 1 and 3, as the subject-matter of these requests is contrary to the agreement under which the plaintiff received and held Plaintiff's Exhibit. 1, as found by the court; and the finding of the court is supported by competent evidence.

Requests 13, 15, 16, and 21 are the same as requests 1, 3, 4, and 9 respectively, except that they relate to Plaintiff's Exhibit 2 and Defendant's Exhibit B. Request No. 22 is as follows: "At the time of the execution and delivery of Plaintiff's 2, the defendant loaned his credit to the plaintiff and to the Consolidated Slate Corporation of Vermont, and received no consideration therefor, and he was not to be held on said note or pay the same or any part thereof until Defendant's B had been paid by the plaintiff."

What we said in disposing of the first group of requests applies with equal force to this group. The court committed no error in failing to comply with these requests.

*Judgment affirmed.*