JOHN MCNAMARA *v.* MICHAEL PICKETT ET UX.

May Term, 1938.

Present: MOULTON, SHERBURNE, BUTTLES and STURTEVANT, JJ., and JEFFORDS, Supr. J.

Opinion filed October 4, 1938.

*Lindley S. Squires* and *Marion L. Ward* for the defendant.

*James P. Leamy* and *Christopher A. Webber* for the plaintiff.

MOULTON, J.   The defendants, Michael Pickett and his wife Margaret Pickett, signed a promissory note, by the terms of which they jointly and severally, and each as principal, promised

to pay to John McNamara, the plaintiff, a certain sum of money one year from date, with interest. The note was not paid at maturity, and this action was brought to recover the amount due thereon. Michael Pickett made no defense, but Margaret filed an answer in which she alleged that she was, at the time of signing the note, and at the time of the trial, the wife of Michael, and that she signed as surety for her husband and not otherwise. Judgment was for the plaintiff against both defendants, and the cause is here upon the exceptions of Margaret to the exclusion of her offer to show, by her own and her husband's testimony, that she signed as surety and not as principal.

As our law stood prior to the enactment of No. 48, Acts of 1929, now P. L. 3076, a married woman was expressly prohibited from becoming surety for her husband's debts except by way of mortgage. G. L. 3523, as amended by No. 90, Acts of 1919. *First Nat. Bank of Montpelier* v. *Bertoli*, 87 Vt. 297, 304, 305, 89 Atl. 359, Ann. Cas. 1917B, 590. By the act of 1929, however, the provision as to suretyship was omitted, although the rest of the statute relating to the power of a married woman to convey real estate by her sole deed, remained the same as before. P. L. 3074 provides that "A married woman may make contracts with any person other than her husband and bind herself and her separate property, in the same manner as if she were unmarried * * *." The defendant argues that since a contractual relation exists between principal and surety and these parties are, in this case, husband and wife, the statute still forbids the latter from becoming a surety; therefore, that the offered evidence should have been received, not to vary the written contract, but to show that as against her there was no contract, even though the note was, on its face, a joint and several one, and was taken by the plaintiff in good faith, and for value without notice of the infirmity, as was held in *Bradley Fertilizer Co.* v. *Caswell*, 65 Vt. 231, 233, 26 Atl. 956; *Wetmore & Morse Granite Co.* v. *Ryle*, 93 Vt. 245, 252, 107 Atl. 109; *Barton Savings Bank & Trust Co.* v. *Bickford*, 97 Vt. 166, 170, 122 Atl. 582; *National Bank of Newbury* v. *Hale*, 98 Vt. 481, 483, 129 Atl. 155; and *Seaboard Nat. Bank* v. *Fisher*, 98 Vt. 506, 507, 129 Atl. 927. These decisions, however, were handed down before the enactment of No. 48, Acts of 1929, to which we have referred, and so are not controlling here. We are of opinion that

the amendment which removed the restriction upon a married woman's suretyship for her husband evinced the intention of the Legislature that thereafter contracts of this nature should be, so far as the creditor is concerned, included under the power granted by P. L. 3074, to contract and bind herself and her separate property as if she were unmarried. What the defendant's rights may be between herself and her husband, we have no need to inquire. The plaintiff seeks to recover upon her promise made to him, and, whether made as surety or as principal, this promise was within her competency to make. The same question arose in *Hackfield & Co., Ltd.* v. *Metcalf,* 20 Hawaii, 47, 52 Ann. Cas. 1912D, 105, 106. The claim was made that the wife could not be a surety for her husband because, if she were, there must have been a contract, either express or implied, between her and her husband. The court said, "While it is true, under our statute, a married woman cannot contract with her husband, there is no reason or rule of law prohibiting her from entering into a contract as surety for her husband." See, also, *Industrial Trust Company* v. *Cantera,* 5 W. W. Harr. (Del.) 364, 165 Atl. 338, 341.

■■ The position of the defendant Margaret must, therefore, be considered as if she had signed the note with a person other than her husband. Her rights are simply those of one, ostensibly a principal, who offers to show that the liability intended to be incurred is that of a surety. In *Claremont Bank* v. *Wood,* 10 Vt. 582, 585, 586, a person who, with another, signed a joint and several note "each as principal" was held, so far as the creditor was concerned, to be a principal, although his relation to his co-signer might be that of a surety, and it was said that since he had seen fit expressly to avow himself a principal in the note, and thereby, so far as the creditor was concerned, to renounce the character and privileges of a surety, the court was not at liberty to absolve him from the consequences. This "sensible doctrine" was approved and followed in *Benedict* v. *Cox,* 52 Vt. 247, 250, and in *Barton Savings Bank & Trust Co.* v. *Bickford,* 97 Vt. 166, 171ff., 122 Atl. 582. Since the note herein suit was signed by the defendant Margaret as principal, to permit her to introduce evidence that she signed it in another capacity "would be in violation of the familiar rule against the admission of parol evidence to change or vary either the terms.

or legal effect of a written instrument, a rule which obtains even though the payee had knowledge that in fact she was signing in some other or different capacity." *Barton Savings Bank & Trust Co.* v. *Bickford, supra.*

■ But the decision need not rest upon the application of the parol evidence rule alone, for the rights and liabilities of the parties are to be measured by the provisions of the Negotiable Instruments Act, P. L. Ch. 283, secs. 7134-7332.

Before the enactment of that statute "the relation between one who signed a joint and several note for the accommodation of another and the party accommodated was that of principal and surety." *Clifford* v. *West Hartford Creamery Co.*, 103 Vt. 229, 246, 153 Atl. 205, 212. The rule is unchanged under the statute. In *Alexander* v. *Chevalier*, 98 Vt. 230, 126 Atl. 498, the affidavit of defense stated that the defendants executed the note in suit "simply as sureties and with no intent to create a direct personal obligation." It was held (p. 234) that, on the facts set out in the affidavit, the defendants would be accommodation parties as defined in P. L. 7166, i.e., those who had signed the instrument as makers, without receiving value therefor, and for the purpose of lending their name to some other person.

The last mentioned section provides that "Such a person [an accommodation party] is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

■ ■ The liability of an accommodation maker to the holder for value is primary and absolute and of the same nature and extent as the liability of a maker who has received value. *Clifford* v. *West Hartford Creamery Co.*, 103 Vt. 229, 247, 153 Atl. 205; *West Rutland Trust Co.* v. *Houston*, 104 Vt. 204, 210, 211, 158 Atl. 69, 80 A. L. R. 664; *Matot* v. *Spallholz*, 104 Vt. 427, 432, 160 Atl. 179. Hence the offered evidence was immaterial, because it did not limit the defendant Margaret's obligation, and so was properly excluded.

■ It may be that we have decided this cause upon a theory not advanced below; but this makes no difference, because we will sustain a ruling upon any legal ground, whether or not it has been brought to the attention of the trial court. *Fairbanks* v. *Stowe*, 83 Vt. 155, 160, 74 Atl. 1006, 138 A. S. R. 1074; *Simp-*

*son* v. *Central Vt. Ry. Co.,* 95 Vt. 388, 394, 115 Atl. 299; *Valenti* v. *Imperial Assurance Co.,* 107 Vt. 65, 71, 176 Atl. 413, and cases cited.

*Judgment affirmed.*